William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

Interim Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ORRICK, HERRINGTON & SUTCLIFFE, LLP DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>All actions. | Master File No. 3:23-cv-04089-SI<br><br>CLASS ACTION<br><br>PLAINTIFFS' NOTICE OF AMENDED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS<br><br>Judge: Hon. Susan Illston<br>Date: May 31, 2024<br>Time: 10:00 AM<br>Courtroom: 1 – 17th Floor<br>Zoom Meeting ID: 161 210 8939<br>Password: 539983 |

## NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS

PLEASE TAKE NOTICE that on May 31, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston, in Courtroom 1 of the above-entitled court, located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102 (Parties and Counsel to appear via Zoom, Meeting ID: 161 210 8939, Password: 539983), Plaintiffs Dennis R. Werley, Robert D. Jensen, Rachel Mazanec, Scott Morrissett, Kimberley L. McCauley, Robert Bass, Jody Frease, Joby Childress, and Cathi Soule (collectively, "Plaintiffs"), will, and hereby do, move the Court under Federal Rule of Civil Procedure 23 for an order: (a) finding that the proposed settlement ("Settlement") is within the range of final approval as fair, reasonable, and adequate, and granting preliminary approval of the proposed Settlement; (b) approving the form and substance of the proposed notice, as well as the proposed methods of disseminating notice to the Settlement Class; (c) scheduling a date for the final fairness hearing and relevant deadlines in connection therewith; and (d) such other and further relief as this Court deems just and proper.

This Motion is supported by the following memorandum of points and authorities, the accompanying Declaration of William B. Federman ("Federman Decl." attached as **Exhibit 3**) and the exhibits thereto, including the Stipulation and Agreement of Class Action Settlement, dated April 11, 2024 ("Agreement" attached as **Exhibit 1**), all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

Dated: May 31, 2024

/s/ William B. Federman
William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
(405) 285-1560

*Interim Lead Class Counsel*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FEDERMAN & SHERWOOD
WILLIAM B. FEDERMAN
*Admitted Pro Hac Vice*
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  405/235-1560
405/239-2112 (fax)
WBF@federmanlaw.com
Interim Lead Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ORRICK, HERRINGTON & SUTCLIFFE, LLP DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>All Actions. | Case No. 3:23-cv-04089-SI<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE TO THE SETTLEMENT CLASS<br><br>Judge: Hon. Susan Illston<br>Date: May 31, 2024<br>Time: 10:00 AM<br>Courtroom: 1 – 17th Floor<br>Zoom Meeting ID: 161 210 8939<br>Password: 539983 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     RELEVANT PROCEDURAL BACKGROUND ......................................... 2

III.    TERMS OF THE SETTLEMENT ........................................................... 3

IV.     APPLICABLE LEGAL STANDARDS ..................................................... 5

V.      THE COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT ................................................................................... 6

        A.      The Settlement Provides a Fair, Adequate and Reasonable
                Result for Settlement Class Members ........................................ 6

                1.      Amount Offered in Settlement ...................................... 7

                2.      The Risk, Expense, and Delay of Further Litigation,
                        Including the Risk of Decertification ......................... 10

                3.      The Extent of Discovery Completed, and the Stage of the
                        Proceedings ............................................................... 10

                4.      The Settlement Administrator ..................................... 11

                5.      The Experience and Views of Counsel ........................ 11

        B.      The Settlement Provides the Best Class Notice Practicable .............. 12

        C.      The Notice Provides a Clear Explanation to Settlement Class
                Members of Their Opportunity to Opt-Out of the Settlement ........... 14

VI.     CERTIFICATION OF THE SETTLEMENT CLASS IS
        APPROPRIATE ................................................................................. 15

        A.      The Settlement Class Should Be Preliminarily Certified ................. 15

                1.      The Rule 23(a) Requirements Are Met ....................... 16

                2.      Rule 23(b)(3) Certification of a Damages Class for
                        Settlement Purposes Is Proper ................................... 18

VII.    THE PROPOSED SCHEDULE OF EVENTS ........................................... 20

VIII.   CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. V. Windsor*
   521 U.S. 591 (1997)...........................................................................................15–16, 19

*Astiana v. Kashi Co.*
   291 F.R.D. 493 (S.D. Cal. 2013) ...................................................................................17

*Beck-Ellman v. Kaz USA, Inc.*
   283 F.R.D. 558 (S.D. Cal. 2012) ...................................................................................17

*Bellinghausen v. Tractor Supply Co.*
   306 F.R.D. 245 (N.D. Cal. 2015).....................................................................................7

*Capps v. Law Offices of Peter W. Singer*
   No. 15-cv-02410-BAS(NLS), 2016 WL 6833937 (S.D. Cal. Nov. 21, 2016) ...................7, 13

*Cervantez v. Celestica Corp.*
   No. EDCV 07-729-VAP (OPx), 2010 WL 2712267 (C.D. Cal. July 6, 2010)........................10

*Churchill Vill., L.L.C. v. GE*
   361 F.3d 566 (9th Cir. 2004) ...........................................................................................6

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) ..........................................................................................5

*Craft v. County of San Bernardino*
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................................................................5

*Ebarle v. Lifelock, Inc.*
   2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) ..................................................................8

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) .........................................................................................16

*Gaston v. Fabfitfun*
   Case No. 2:20-cv-09534 (C.D. Cal.).................................................................................14

*Graves v. United Indus. Corp.*
   No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210 (C.D. Cal. Feb. 24, 2020)....................15–16

*Grunin v. Int'l House of Pancakes*
   513 F.2d 114 (8th Cir. 1975) ..........................................................................................13

*Hart v. Colvin*
   No. 15-cv-00623-JST, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016)...................................5–6

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ..................................................................6, 17, 19

*In re Anthem Data Breach*
327 F.R.D. 299 (N.D. Cal. 2018)......................................................................14, 20

*In re Brinker Data Incident Litig.*
No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........12, 16–17, 19

*In re Equifax Inc. Customer Data Sec. Breach Litig.*
No. 1:17-md-2800-TWT (N.D. Ga.)........................................................................12

*In re Facebook Biometric Info. Priv. Litig.*
No. 15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) .........................14

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*
No. 1:14-md-02583-TWT (N.D. Ga.).....................................................................12

*In re Immune Response Sec. Litig.*
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................................11

*In re LDK Solar Sec. Litig.*
255 F.R.D. 519 (N.D. Cal. 2009) ...........................................................................18

*In re Linkedin User Privacy Litig.*
309 F.R.D. 573 (N.D. Cal. 2015)........................................................................8, 20

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*
No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019)....................14, 20

*In re Sonic Corp. Customer Data Breach Litig.*
No. 1:17-md-02807-JSG (N.D. Ohio) .....................................................................12

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*
MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)............10

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020)
*appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021).........................20

*Just Film, Inc. v. Buono*
847 F.3d 1108 (9th Cir. 2017) ...............................................................................19

*Kostka v. Dickey's Barbecue Restaurants, Inc.*
2022 WL 16821665 (N.D. Tex. Nov. 8, 2022)

*adopting report and recommendation* 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ............ 19

*Low v. Trump Univ., LLC*
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ................................................................. 17

*Low v. Trump Univ., LLC*
   881 F.3d 1111 (9th Cir. 2018) ............................................................................ 14

*Mahoney v. TT of Pine Ridge, Inc.*
   No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ............ 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*
   339 U.S. 306 (1950) ......................................................................................... 12

*Perkins v. Linkedin Corp.*
   2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ............................................................. 8

*Rannis v. Recchia*
   380 F. App'x 646, 651 (9th Cir. 2010) .................................................................. 16

*Remoundos v. LendUS, LLC*
   No. 3:22-cv-00749-EMC (N.D. Ca., 2022) ................................................................ 8

*Riker v. Gibbons*
   No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .................... 11–12

*Rodriguez v. W. Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) ............................................................................ 10

*Smith v. Triad of Ala., LLC*
   No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)
   *aff'd on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017) .......................... 19

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) .............................................................................. 5

*Stein v. Ethos Tech., Inc. et al*
   No. 3:22-cv-09203-SK (N.D. Ca., 2022) .................................................................. 8

*Tyson Foods, Inc. v. Bouaphakeo*
   577 U.S. 442 (2016) ......................................................................................... 19

*United States v. Armour & Co.*
   402 U.S. 673 (1971) ......................................................................................... 17

**OTHER AUTHORITIES**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002) .............. 11

Cal. Civ. Code Ann. § 1798.150(a)(1)(A) ........................................................................ 9

Federal Judicial Center, Illustrative Forms of Class Action Notices: Overview,
    https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction
    (last visited Feb. 19, 2024) .................................................................................... 13

Fed. R. Civ. P. 23 .................................................................................................*passim*

*Federal Trade Commission – Identity Theft Survey Report*, Synovate (Sept. 2003),
    available at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ftc.gov/
    sites/default/files/documents/reports/federal-trade-commission-identity-theft-
    program/synovatereport.pdf.) .................................................................................. 9

*Manual for Complex Litigation* §21.63 (4th ed. 2004) ............................................ 5, 12

## I.      INTRODUCTION[1]

After multiple days of long mediation discussions, the Parties reached a global settlement to resolve this consolidated class action litigation.   Under the Agreement, Orrick will pay $8,000,000.00 into a Settlement Fund.  Importantly, the Settlement Fund is non-reversionary, so that no part of it will ever revert to Orrick, and Settlement Class Members who complete the Claim Form are entitled to cash payments of: up to $2,500.00 for out-of-pocket expenses, $7,500.00 for extraordinary losses, $25.00 per hour for up to five hours of attested time (for a total of $125.00), an alternative cash payment of $75.00, and $150.00 for California Subclass Members' California Consumer Privacy Act ("CCPA") claims, subject to pro rata reduction or increase, depending on the number of claims.[2]  Settlement Class Members are also entitled to seek three years of additional credit monitoring.

This is a fair, adequate, and reasonable Settlement.  Both Plaintiffs and Orrick strongly believe in the merits of their claims and defenses, respectively, and compromised to reach this result. Plaintiffs and Class Counsel have extensively investigated the facts and law relating to the claims and Orrick's defenses. The Parties have engaged in meaningful informal discovery. While Plaintiffs and Class Counsel believe their claims are meritorious, they also recognize the expense and amount of time it would take to continue prosecuting this Action through trial and any subsequent appeals.  Plaintiffs and Class Counsel have taken into account the uncertain outcome and risk involved in any litigation, especially complex actions such as this one, including the difficulties and delays inherent in the litigation process. With all of these facts in mind, Plaintiffs and Class Counsel are confident that the Settlement is fair, reasonable, adequate, and in the best

---

[1] Orrick does not oppose the relief sought by this Motion for Preliminary Approval (the "Motion") and agrees that the Court should grant preliminary approval and allow notice to issue to the Settlement Class. By not opposing this relief, Orrick does not concede the factual basis for any claim and denies liability. The language in this motion, including the description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Orrick may disagree with certain of those characterizations and descriptions.

[2] To the extent any de minimis funds remain after distribution to the Settlement Class Members, the parties will, consistent with Section 7.4 and the Court's Procedural Guidance for Class Action Settlements, seek Court approval for their selection of an appropriate charitable organization.

interests of the Settlement Class. Significant risk existed in this Action, including that the Court could deny class certification or a jury could agree with Orrick's principal defense in this case – that it was not negligent in storing and securing Plaintiffs' and the Class Members' PII, which would prevent *any* class recovery. This Settlement resolves those risks and others, and provides immediate monetary relief to Settlement Class Members, who will not have to face the uncertainty and delay of further litigation, including summary judgment, trial, and appeals.

Plaintiffs request, therefore, that the Court grant their motion for preliminary approval, order distribution of the Notices to the Settlement Class, and set a date and time for a Fairness Hearing pursuant to Fed. R. Civ. P. ("Rule") 23(e)(2).

## II.     RELEVANT PROCEDURAL BACKGROUND

This consolidated lawsuit arises from the alleged compromise of Plaintiffs' and the Class Members' PII due to a breach of Orrick's network. On or around March 13, 2023, Orrick, Herrington & Sutcliffe, LLP ("Orrick") detected third-party criminal activity on its network (the "Data Breach"). Upon further investigation of the matter, Orrick determined that the third-party gained unauthorized access to its network between November 19, 2022 and March 13, 2023. At the end of 2023, Orrick confirmed that 638,023 individuals' Personal Identifiable Information ("PII") was potentially accessed and exfiltrated in the Data Breach. By January 2024, Orrick had sent notice letters to impacted individuals consistent with its data breach notification obligations.

On August 11, 2023, Plaintiff Dennis R. Werley filed the first complaint against Orrick in this Court for claims arising from the Data Breach. (ECF No. 1). Subsequent related complaints were filed, and on December 19, 2023 the Court entered an order consolidating the related actions and appointing William B. Federman as Interim Lead Class Counsel (ECF No. 49). On January 5, 2024, Plaintiffs filed the Consolidated Class Action Complaint (ECF No. 53). No other actions related to the Data Breach are pending.

During this time, the Parties were engaging in multiple days of mediation discussions in front of Mediator Antonio Piazza and conducted meaning informal discovery. The Parties also continued to pursue this action by conducting a Rule 26(f) conference and drafting and filing case

1   management statements. On eve of the Parties' initial scheduling conference, December 14, 2023,

2   the Parties came to a settlement agreement and promptly notified the Court. (ECF No. 50).

3   **III. TERMS OF THE SETTLEMENT**

4       The scope of the Settlement Class largely mirrors that which Plaintiffs pled in their

5   Consolidated Complaint, and is defined as "all residents of the United States who were sent notice

6   that their personal information was accessed, stolen, or compromised as a result of the Data

7   Breach." Ex. 1, § 2.2.41.[3] In the Consolidated Complaint, the definition was defined as "All

8   persons whose Personal Information was compromised by the Data Breach…." [Doc. 53, ¶ 170].

9   Consistent with its notice requirements under the law, Defendant informed Plaintiffs and Class

10   Counsel that it has notified individuals whose information was impacted by the Data Breach. As

11   such, the definition contained in the Settlement Agreement accurately identifies members of the

12   class.

13       Within twenty (20) business days after the entry of the Effective Date, Orrick shall deposit

14   or cause to deposit into the Settlement Fund Account the $8,000,000.00. Ex. 1, § 3.3.1. The cost

15   of Notice to the Settlement Class and settlement administration ("Administrative and Notice

16   Costs") will be paid from the Settlement Fund. *Id.* at § 3.3.2. The Parties propose KCC Class

17   Action Services LLC ("KCC") to serve as the Settlement Administrator, subject to the Court's

18   approval. The proposed Notice Plan and plan for claims processing is discussed below in § V.B–

19   C and in the Declaration of Christie K. Reed in Support of Settlement Notice Plan ("Reed Decl."),

20   attached to the Federman Declaration as **Exhibit 2**. KCC currently estimates that Administrative

21   and Notice Costs will cost around $610,000.00. This estimate is based on the Notice Plan set forth

22   in the Reed Declaration, Ex. 2, ¶¶10–16, and Exhibit D of the Agreement. The Parties obtained

23   competing bids from four different possible claims administrators and negotiated the current bid

24

25   [3]   The following are excluded from the Settlement Class: (i) Orrick, any Entity in which Orrick

26   has a controlling interest, and Orrick's partners, officers, directors, legal representatives,
     successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the

27   Action and the members of their immediate families and judicial staff; and (iii) any individual who
     timely and validly opts out of the Settlement. *Id.*

28

price from KCC, finding KCC's bid to be the most favorable to the Class. Notice and Administration Expenses will vary to the extent actual experience differs from these assumptions.

Because the Settlement Fund is a "qualified settlement fund," within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid from the Settlement Fund.

As further consideration to the Settlement Class, Orrick has agreed to make numerous business practices changes relating to data security. Orrick has also confirmed that, as a direct result of Plaintiffs' filing of the Action, Orrick has already implemented several improvements to its data security.  Ex. 1, §8.1. These enhancements include improving its detection and response tools, enhancing its continuous vulnerability scanning at both the network and application levels, deploying additional endpoint detection and response software, and with the help of an industry leading cybersecurity vendor, performing additional 24/7 network managed detection and response. *Id.*

Additionally, Plaintiffs may seek Service Awards not to exceed $2,500.00 each in recognition of their time and service to the Settlement Class. Any such amounts the Court awards shall be paid from the Settlement Fund. An award in the case is appropriate as the named Plaintiffs spent time providing Class Counsel with information regarding this Data Breach, aiding Class Counsel in mediation, and promoting the claims of the class.  Any uncashed Service Award payment will be treated consistent with Section 7.4 and distributed, pro rata, to the settlement class.

Class Counsel will submit an application with their opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of up to 25.00% of the Settlement Fund, to be paid from the Settlement Fund – Class Counsel's lodestar currently totaling over $495,000.00 (over 600 hours of work); (b) payment of expenses or charges resulting from the prosecution of the Action in an amount not to exceed $50,000.00; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.[4]  Class

---

[4] The possible award of attorneys' fees is common and reasonable in class action cases. *Craft v. County of San Bernardio*, 624 F. Supp. 2d 1113, 1117 (C.D. Cal. 2008) (25% of the common fund is a benchmark for attorney fees.).

Counsel's maximum expense figure is based on their current expenses and estimates of incurred expenses that have not yet been invoiced, and expenses that will be incurred between now and the filing of counsel's application for award of attorneys' fees and expenses.  Unless otherwise ordered by the Court, such fees and expenses shall be paid from the Settlement Fund within twenty-one (21) business days after the Effective Date.

Once Administrative and Notice Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses, and any Service Awards to the Plaintiffs have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed to Settlement Class Members who file a Claim Form, subject to pro rata reduction or increase as may be appropriate.  Ex. 1, § 7.  If money remains in the Net Settlement Fund, including for settlement checks that are not cashed by the deadline to do so, will distributed pro rata to Settlement Class Members who submitted Approved Claims and cashed their initial checks unless the Settlement Administrator determines any additional distribution would not be economically feasible considering the amount of funds remaining (including for instance, if the additional distribution would be *de minimis*), in which case any remaining funds shall be distributed to a charitable organization approved by the Parties and subject to Court approval. *Id.* at § 7.4.

The Settlement provides a simple, straightforward claims process by which Settlement Class Members may obtain an award from the Settlement.

In exchange for the monetary and non-monetary benefits provided under the Settlement, Settlement Class Members will release any and all claims against Orrick and the Released Parties arising from or which are related in any way to the claims that have been brought or could have been brought in the Action. *Id.* at § 14. The Settlement Agreement releases all claims brought in the Consolidated Complaint and all claims that could have been brought therein.

## IV.    APPLICABLE LEGAL STANDARDS

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002, at *4 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  In the context of a class settlement, the Court must determine whether the settlement is "'fundamentally fair,

adequate and reasonable'" under Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). "'The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.'" *Hart*, 2016 WL 6611002, at *4 (quoting *Seattle*, 955 F.2d at 1276). The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004).

Under the 2018 Amendments to Rule 23, the Court's task at the preliminary approval stage is to determine whether it will likely be able to grant final approval. *See* Rule 23(e)(2); *cf. Hart*, 2016 WL 6611002, at *5 (within range of approvability) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Courts do not have the ability to 'delete, modify, or substitute certain provisions'; the settlement 'must stand or fall in its entirety.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1026).

## V.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.     The Settlement Provides a Fair, Adequate and Reasonable Result for Settlement Class Members

"Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Hart*, 2016 WL 6611002, at *5 (quoting *Tableware*, 484 F. Supp. 2d at 1079). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *See id.* (citing *Hanlon*, 150 F.3d at 1027). The Court considers:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views

of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).

In addition to the Ninth Circuit's factors, the Supreme Court has approved amendments to Rule 23(e), which went into effect on December 1, 2018. The amendments involve considerations for judicial approval of class action settlements and are substantially incorporated within the Ninth Circuit's existing factors set forth above.[5]  For example, amended Rule 23(e)(2)(C)(i) requires that courts consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," and amended Rule 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." Both these considerations are discussed in detail below. Additional amendments are discussed herein.  Finally, Amended Rule 23(e)(2)(B) (whether the proposal was negotiated at arms' length), amended Rule 23(e)(2)(C)(ii) ("effectiveness of any proposed method of distributing relief to the class"), Rule 23(e)(2)(C)(iii) ("proposed award of attorneys' fees, including timing of payment"), Rule 23(e)(2)(C)(iv) ("any agreement required to be identified"), and Rule 23(e)(2)(D) (whether "the proposal treats class members equitably relative to each other") are all addressed above under Section III, Terms of the Settlement.

---

[5]    Rule 23(e)(2), as amended, provides that in order for the Court to conclude that it will likely find that the settlement is fair, reasonable and adequate, it must consider the following factors:

  (A) the class representatives and class counsel have adequately represented the class;
  (B) the proposal was negotiated at arm's length;
  (C) the relief provided for the class is adequate, taking into account:
      (i)    the cost, risks and delay of trial and appeal;
      (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorney's fees including timing of payment; and
      (iv) any agreement required to be identified under Rule 23(e)(3); and
  (D) the proposal treats class members equitably relative to each other.

1.     **Amount Offered in Settlement**[6]

The Settlement Fund represents a fair, adequate, and reasonable result for Settlement Class Members.  "As explained by the Supreme Court, '[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'" *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-02410-BAS(NLS), 2016 WL 6833937, at *8 (S.D. Cal. Nov. 21, 2016) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).  Courts routinely approve settlements that provide a far lower rate of recovery than the Settlement does here.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving class settlement of 11%-27% recovery); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 20, 2017) (approving settlement awarding class members 0.8% of minimum statutory damages).

A Settlement providing for a non-reversionary Settlement Fund of $8,000,000.00, as well as significant, valuable injunctive relief (separate from the $8,000.000.00 non-reversionary fund), is clearly a substantial benefit to the Settlement Class.  As described above, if there is any remaining amount in the Net Settlement Fund after the payment of up to $2,500.00 for out-of-pocket expenses, $7,500.00 for extraordinary losses, $25.00 per hour for up to five hours of attested time (for a total of $125.00), an alternative cash payment of $75.00, and $150.00 for California Subclass Members' California Consumer Privacy Act ("CCPA") claims, Settlement Class Members are entitled to an additional supplemental cash payments on a pro-rata basis. By any metric, this recovery is fair, reasonable, and adequate. *See e.g., Stein v. Ethos Tech., Inc. et al*, No. 3:22-cv-09203-SK (N.D. Ca., 2022) (ECF No. 42) (granting preliminary approval of class action settlement for $5,000.00 in out-of-pocket costs and $100 for CCPA claims); *Remoundos v. LendUS, LLC*, No. 3:22-cv-00749-EMC (N.D. Ca., 2022) (ECF No. 44) (granting preliminary approval of class action settlement for three hours of lost time at $20 per hour; $500 in out-of-pocket expenses; $2,500.00 in extraordinary expenses; and $100 for CCPA claims).

---

[6]     This factor overlaps with amended Rule 23(e)(2)(C) (adequacy of relief provided to the class).

Indeed, the Settlement compares favorably with other Settlements that have been approved in privacy cases in this district. *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 581, 588 (N.D. Cal. 2015) (granting final approval of $1.25 million Settlement where the class size was estimated to be 800,000, with each claimant receiving $14.81); *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *2, 9 (N.D. Cal. Feb. 16, 2016) (granting final approval of $13 million Settlement where the class size was approximately 20.8 million; each claimant received approximately $20); *Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *2, 5 (N.D. Cal. Sept. 20, 2016) (granting final approval of $68 million Settlement where class members who made claims received approximately $20 plus the amount paid for service, and subclass members received either $19.48 or $39.48).

### Comparison of Settlement Benefits Against Full Recovery

The benefits made available under this Settlement give Plaintiffs and Class Members cash, reimbursement for losses, credit monitoring, and cybersecurity enhancements, which is beyond what Class Members would be seeking on their best day in Court.

If Plaintiffs had prevailed at trial, they would have sought recovery for their out-of-pocket losses and the cost of obtaining credit monitoring. Plaintiffs believe that the $2,500 cap for out-of-pocket expenses and the $7,500 cap for extraordinary out-of-pocket expenses will likely make each class member whole. According to the Federal Trade Commission's Identity Theft Survey Report, 85% of identity theft victims report the misuse of existing accounts and 17% of victims report new accounts being opened in their name. *Federal Trade Commission – Identity Theft Survery Report*, Synovate (Sept. 2003), available at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-identity-theft-program/synovatereport.pdf. For those identity theft victims who had misuse of existing accounts, the average out-of-pocket loss was $500, while the average loss for improperly opened accounts was $1,200. *Id*. Moreover, only a maximum of 6 percent of those who had improper use of existing accounts had out-of-pocket losses of $1,000 or above, and 16 percent of those that had accounts opened in their name had losses of $1,000 or above. *Id*. This recovery for out-of-pocket losses is then combined with the alternative cash payment to make all Class Members whole. Thus, while Plaintiffs acknowledge the possibility

that there could be individuals who would be able to achieve greater recovery if this matter went to trial, the overwhelming number of eligible Class Members will have the opportunity to be made whole by this Settlement.

With respect to statutory damages under the CCPA, if successful at trial, the California Subclass Members would each be entitled to between $100 and $750 per individual. Cal. Civ. Code Ann. § 1798.150(a)(1)(A)). Ordinarily under the CCPA, a plaintiff is entitled to the greater of actual or statutory damages, but not both. *See id.* Here, California Subclass Members are eligible to receive $150, plus credit monitoring and identity theft protection, the reimbursement of actual losses, and a *pro rata* share of any remaining funds.

<u>**Other Comparable Outcomes**</u>

In Courts in *Thomsen, et al., v. Morley Companies, Inc.*, No. 1:22-cv-10271-TLL-PTM, (E.D. Mich.) and *In re: Am. Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-2904 (D.N.J.) approved a similar data breach class action settlement:

| Case | *Morley Companies, Inc.* | *In re: Am. Medical Collection Agency* | *Orrick Herrington & Sutcliffe* |
|---|---|---|---|
| **Settlement Class** | 694,679 individuals | 420,000 individuals | 638,023 individuals |
| **Information Disclosed** | Social Security numbers, names, addresses, date of birth, driver's license numbers, client identification numbers, medical diagnostics and treatment information, and health insurance information | Social Security numbers, credit card information, and medical information | Names and Social Security numbers |
| **Total Settlement Fund** | $4,300,000.00 | $6,300,000.00 | $8,000,000.00 |
| **Out-of-Pocket Expenses** | Up to $2,500.00 | Up to $5,000.00 | Up to $2,500.00 |
| **Extraordinary Losses** | Not Specified | Not Specified | Up to $7,500.00 |
| **Time Spent** | Up to 4 hours at $20/hour | Not Specified | Up to 5 hours at $25/hour |

| | | | |
|---|---|---|---|
| **Alternative Cash Payment** | Not Specified | Not Specified | $75.00 |
| **Credit Monitoring** | 3 years with 3-Bureau Credit Monitoring | Not Specified | 3 years with 3-Bureau Credit Monitoring |
| **CCPA Claims** | $75.00 | $50.00 | $150.00 |
| **Remedial Measures** | Significant and Meaningful Remedial Measures | Not Specified | Significant and Meaningful Remedial Measures |
| **Attorney Fees** | 33% | Pending | Up to 25% |

Like this case, the *Thomsen* case created a non-reversionary settlement fund which was used to pay all claims, the claims administrator, the attorney fees and expense award, and the class representative service awards. *Thomsen, et al., v. Morley Companies, Inc.*, No. 1:22-cv-10271-TLL-PTM (E.D. Mich., May 12, 2023) (Doc. 39). The Settlement Agreement in this case provides substantially similar if not better benefits to the Settlement Class than the recently approved *Thomsen* benefits.

> **2.      The Risk, Expense, and Delay of Further Litigation, Including the Risk of Decertification**[7]

While Plaintiffs are confident in the strength of their claims and that the Court would certify a class, Orrick is confident in its defenses and arguments against class certification.  Plaintiffs acknowledge the risk that they would be unable to obtain a jury verdict against Orrick. During mediation, Orrick raised non-frivolous arguments as to its duty to the class members, as well as negligence and breach of its duties to Plaintiffs and the Class Members. Settlement Class Members thus faced the risk, expense, and delay of a potentially lengthy appeal after trial, holding up any recovery for Settlement Class Members for several more years.

Accordingly, "Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 6248426, at

---

[7]      As stated above, this factor overlaps with amended Rule 23(e)(2)(C)(i), which involves consideration of whether "the relief provided to the class is adequate, taking into account . . . the costs, risks and delay of trial and appeal."

*11 (N.D. Cal. Oct. 25, 2016).  "Settlement is favored in cases [such as this one] that are complex, expensive, and lengthy to try."  *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).  Thus, these risk and delay factors support approval of the Settlement.

### 3.       The Extent of Discovery Completed, and the Stage of the Proceedings[8]

The fact that the Parties engaged in meaningful informal discovery "weighs in favor of the proposed settlement."  *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 WL 2712267, at *3 (C.D. Cal. July 6, 2010). Although the Parties' engagements to date have primarily been conducted outside of the Court system, the Parties have conducted meaningful discovery and engaged in lengthy mediation discussions and legal discussions surrounding this case.

### 4.       The Settlement Administrator

The Parties propose KCC Class Action Services LLC ("KCC") to serve as the Settlement Administrator, subject to the Court's approval.  The proposed Notice Plan and plan for claims processing is discussed above in § V.B–C, in Exhibit D of the Agreement and in the Declaration of Christie K. Reed in Support of Settlement Notice Plan ("Reed Decl."), attached to the Federman Declaration as **Exhibit 2**.  KCC currently estimates that Administrative and Notice Costs will cost around $610,000.00.  This estimate is based on the Notice Plan.  The Notice Plan includes the required CAFA Notice under 28 U.S.C. § 1715.

In obtaining bids from potential claims administrators, Plaintiff reached out to four different administrative companies and obtained competing bids. Plaintiff received four competing bids from potential settlement administrators. KCC and another company provided the most favorable prices. Plaintiffs spent time negotiating these bids further and obtained the current bid price from KCC. KCC's bid price is the most fair and reasonable to the class. Defendant subsequently approved the use of KCC and its bid. Plaintiffs' counsel has worked with KCC a hand full of times over the past two years in *Mednax Services, Inc., Customer Data Security Breach*

---

[8]   This factor also overlaps with amended Rule 23(e)(2)(A), which involves consideration of whether "the class representatives and class counsel have adequately represented the class."

*Litigation*, No. 21-MD-02994-RAR (S.D. Fla); *Mackey v. Belden, Inc.*, No. 4:21-cv-00149-JAR (E.D. Mo.); and *Carbone v. Amyris, Inc., et al.*, No. 4:19-cv-01765-YGR (N.D. Cal.). However, Plaintiffs' counsel has worked equally with other settlement administrators during that duration as well.

KCC's costs are reasonable and fair given the size of the class and claims in this case. Ex. 2, ¶ 32. KCC's bid is based on a reasonable claims rate of 3%. KCC has maintained insurance to cover any errors, and has taken necessary precautions to keep Settlement Class Members' personal information safe and confidential. *Id.*

### 5.    The Experience and Views of Counsel

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4-5 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). "'The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation, competence, experience in the particular type of litigation, and the amount of discovery completed.'" *Id.* at *4 (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)).

Plaintiffs and Settlement Class Members are represented by William B. Federman of Federman & Sherwood, among others. Mr. Federman is highly experienced in handling complex class actions similar to this Action and have proven track records of experience, knowledge, and success in litigating complicated litigation matters, including data breach cases. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.) (plaintiffs' counsel involved in securing settlement of $380.5 million cash benefits plus a commitment to another $1 billion in improved data security); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021) (court-appointed class counsel in certified Rule 23(b)(3) class action on behalf of individual consumers following data breach involving payment card information); *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (settlement fund of $13 million); *In re Sonic Corp.*

1  *Customer Data Breach Litig.*, No. 1:17-md-02807-JSG (N.D. Ohio) (settlement fund of $4.325

2  million).  Indeed, this Court has previously seen fit to appoint Mr. Federman as Interim Lead Class

3  Counsel to represent, on a putative basis, the very Class that will receive the benefits of this

4  Settlement.  *See* ECF No. 49.

5         Class Counsel believe that the Settlement provides a fair, adequate, and reasonable

6  recovery for Settlement Class Members.  As Class Counsel are experienced attorneys in this field,

7  their opinion that the Settlement is fair, adequate, and reasonable for Settlement Class Members

8  also weighs in favor of approval of the Settlement.  *Riker*, 2010 WL 4366012, at *5.

9        **B.    The Settlement Provides the Best Class Notice Practicable**

10         The second step of the approval process is to disseminate notice of the pendency and

11  settlement of the class action.  *See Manual for Complex Litigation*, *supra*, at §21.63.  Settlement

12  Class Members must receive the best notice practicable under the circumstances, *see* Rule 23(c)(2),

13  which means notice that is "reasonably calculated, under all the circumstances, to apprise

14  interested parties of the pendency of the action and afford them an opportunity to present their

15  objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  "[T]he

16  mechanics of the notice process are left to the discretion of the court subject only to the broad

17  'reasonableness' standards imposed by due process.'"  *Capps*, 2016 WL 6833937, at *10 (quoting

18  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).

19         Under the Agreement and as explained in the Reed Declaration, Settlement Class Members

20  will be provided the best possible opportunity to see, review and understand the Notice.  Orrick

21  will provide the Settlement Administrator with the list of the names, email addresses, and/or

22  physical addresses of all Settlement Class Members identified through its records.  ***This is over***

23  ***99% of the Settlement Class.*** Ms. Reed has declared that the Notice will "reach over 95% of the

24  Settlement Class" after accounting for email bounce backs and undelivered mail. Ex. 2, ¶ 17.

25  Those Settlement Class Members identified will be contacted ***directly*** based on this information.

26  Namely, the Settlement Administrator shall be responsible for printing and mailing and/or

27  emailing (depending on the information available) the Notice and Claim Form, to those specific

28  Settlement Class Members identified through Orrick's records.  Ex. 1, § 9; Ex. 2, ¶¶ 10–13.

To ensure that all Settlement Class Members may be provided notice, the Notice Plan, attached to the Settlement Agreement (Ex. 1) and Exhibit D, allows for Lead Class Counsel, Federman & Sherwood, to make two public postings directing any possible Settlement Class Members to the Settlement website. Ex. 1-D.

The Settlement Administrator will also establish a Settlement website to which Settlement Class Members may refer for information about the Action and Settlement and submit online Claim Forms and inquiries.  The Settlement Administrator shall post the Long Notice and Claim Form on the website as well as other important documents and deadlines, in consultation with counsel for the Parties.  Ex. 1, § 9; Ex. 2, ¶ 14.

Further, the proposed Notices are plain and easily understood, consistent with the guidelines set forth by the Federal Judicial Center.  *See* Federal Judicial Center, Illustrative Forms of Class Action Notices: Overview, https://www.fjc.gov/ content/301253/illustrative-forms-class-action-notices-introduction (last visited Feb. 19, 2024). The Notices provide neutral, objective, and accurate information about the nature of the Action and the Settlement.  *See id.*  The Notices describe the claims, the Settlement Class Members, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form, seeking exclusion, objecting, and/or appearing at the Fairness Hearing personally or through counsel.  Ex. 1, §§ 9–11.  The Parties submit that the Notices provide the best notice practicable under the circumstances and will be highly effective in reaching virtually 100% of the Settlement Class Members.

The claims rate in this settlement will likely fall between 3% and 6%. Ex. 2, ¶ 34. This comports with Class Counsel's expectations, where based on previously approved similar processes in similar cases, Class Counsel expects that the claims-rate will be between 1% and 9%. *Id.* at ¶ 33. This claims-rate would not be unusual for a class settlement. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%). Nor would it be unusual for data breach settlements. *In re Anthem Data Breach*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (1.8% claims rate); *In re Premera Blue Cross Data Breach*, Case No. 3:15-md-

02633 (D. Or.) (7.81% claims rate); *Gaston v. Fabfitfun*, Case No. 2:20-cv-09534 (C.D. Cal.) (5.27% claims rate).

### C.   The Notice Provides a Clear Explanation to Settlement Class Members of Their Opportunity to Opt-Out of the Settlement

Rule 23(c)(2)(B), in relevant part, provides that the notice shall also apprise class members that "the court will exclude from the class any member who requests exclusion[, and] the time and manner for requesting exclusion."  *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1307 (S.D. Cal. 2017).  A notice of a class member's right to opt out of a class action settlement must be "'of such nature as reasonably to convey the required information' regarding the window for class members to opt out of or remain in the class." *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1120 (9th Cir. 2018) (citation omitted).

The proposed Long Notice, attached to the Agreement (Ex. 1) as Exhibit C, will provide clear instructions to Settlement Class Members regarding the procedures they must follow to opt out of the Settlement Class, including the deadline by which Settlement Class Members will be required to opt out.  Prior to the date of the Final Approval Hearing, Lead Class Counsel will file with the Court an affidavit from the Settlement Administrator identifying those Persons who have timely and validly excluded themselves from the Settlement. Ex. 1, § 9.1.12. All Settlement Class Members who do not timely and validly opt out of the Settlement Class shall be bound by all terms of the Settlement.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Under the terms of the Agreement, the Parties have agreed, for the purposes of the Settlement only, to the certification of the Settlement Class, defined as follows:

> All residents of the United States who were sent notice that their personal information was accessed, stolen, or compromised as a result of the Data Breach. Excluded from the Settlement Class are (i) Orrick, any Entity in which Orrick has a controlling interest, and Orrick's partners, officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff, and (iii) any individual who timely and validly opts out of the Settlement.

Ex. 1, § 2.41. The California Subclass is defined as "members of the Settlement Class who were residents of the State of California any time between November 19, 2022 and March 13, 2023." *Id.* at § 2.6.

The Consolidated Complaint defined the proposed Nationwide Class as: "[a]ll persons whose Personal Information was compromised by the Data Breach discovered on or about March 13, 2023." [Doc. 53, ¶ 170]. The Consolidated Complaint further defined the Statewide California Subclass as: "[a]ll residents of California whose Personal Information was compromised by the Data Breach." *Id.* at ¶ 172. Excluded from both proposed Classes were (1) Defendant; (2) any entity in which Defendant has a controlling interest; (3) Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns; and (4) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff. *Id.* at ¶ 171.

The Settlement Class and California Subclass, as defined by the Settlement Agreement, are substantially similar to the Classes defined within the Settlement Agreement. Orrick provided notice to persons whose Personal Information was accessed, stolen, or compromised by the Data Breach, as required by applicable laws. The Settlement Class provides a clearer and more definite and ascertainable definition to that of the proposed Class, and therefore is more appropriate. The Settlement Agreement further clarifies the California Subclass as (1) persons who were sent notice of the data breach, and (2) were residents the State of California between November 19, 2022 and March 13, 2023 – i.e., persons who are able to bring CCPA claims in this class action.

As set forth below, the requirements of Rules 23(a) and (b)(3) are satisfied, and the Settlement Class should be certified for settlement purposes only.  In addition, Plaintiffs should be appointed as Settlement Class Representatives, William B. Federman of Federman & Sherwood should be appointed Lead Class Counsel, and William B. Federman of Federman & Sherwood, Robert Green of Green & Noblin, P.C., Amber L. Schubert Jonckheer & Kolbe, LLP, and M. Anderson Berry of Clayeo C. Arnold APC should be appointed Class Counsel. Mr. Federman is well qualified to act as lead counsel for the class and finalize a favorable settlement agreement for the class. Ex. 2, ¶¶ 3–13. Mr. Federman has acted as lead counsel and many cases and successfully

settlement multiple class actions, such as this one. *Id.* Based on Mr. Federman's experience, this settlement is a fair, adequate, and favorable settlement for the class. *Id.* at ¶ 19.

### A.   The Settlement Class Should Be Preliminarily Certified

In connection with assessing the parties' settlement, the Court must also confirm that the proposed Settlement Class meets the requirements of Rule 23.  *See Amchem Prods. V. Windsor*, 521 U.S. 591,620 (1997); *Graves v. United Indus. Corp.*, No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210, at *9 (C.D. Cal. Feb. 24, 2020). "In assessing those class certification requirements, a court may properly consider that there will be no trial."  *Graves*, 2020 WL 953210 at *9.  Thus, a finding that a litigation class is inappropriate is not a barrier to certification of a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

#### 1.   The Rule 23(a) Requirements Are Met

The requirements of Rule 23(a) are well known: numerosity, commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

##### a.   Numerosity

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable."  "The requirement is met if, due to class size, it would be extremely difficult or inconvenient to join all class members." *Brink v. First Credit Res.*, 185 F.R.D. 567, 569 (D. Ariz. 1999). To this end, "courts [generally] find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).  Here, the Settlement Class consists of 638,023 individuals who Orrick notified that their PII and may have been compromised.  Plainly, numerosity is satisfied.

##### b.   Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." A single common question is sufficient. *See Ellis*, 657 F.3d at 981. Here, each claim of the Settlement Class turns on the question of whether Orrick's security protocols were adequate to protect Settlement Class

Members' PII. Analysis of this question begets interrelated questions that are also common across the Settlement Class, including what steps Orrick took to identify and respond to security threats, whether Orrick complied with industry norms and applicable regulations (including under the Federal Trade Commission Act, the California Legal Remedies Act, the Rules of Professional Conduct, the California Consumer Privacy Act), and whether and when Orrick knew or should have known of the Data Breach.  Commonality is, thus, easily satisfied.  *See Brinker*, 2021 WL 1405508, at *8 (commonality met in data breach case where there were "several questions that are common to the class and capable of classwide resolution, including whether Brinker had a duty to protect customer data, whether Brinker knew or should have known its data systems were susceptible, and whether Brinker failed to implement adequate data security measures to protect customers' data").

### c.    Typicality

Rule 23(a)(3)'s typicality standard is permissive. "[C]laims are 'typical' if they are reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020. "[T]hey need not be substantially identical." *Id.*; *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (same) (Huff, J.).  Here, Plaintiffs and the Settlement Class were allegedly injured through Orrick's alleged singular pattern of misconduct. Plaintiffs' claims and legal theories, both in their individual and representative capacities, arise under this same factual predicate (*i.e.*, the Data Breach).  *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 565 (S.D. Cal. 2012) (typicality satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability.").  The elements Plaintiffs must prove for negligence, negligence per se, breach of fiduciary duties, breach of confidence, breach of implied contract, invasion of privacy, California Consumer Privacy Act claim, and Injunctive/Declaratory relief are identical to what Settlement Class Members must prove to establish Orrick's liability.  There are no defenses unique to Plaintiffs.  Typicality is met here. *See Brinker*, 2021 WL 1405508, at *8 (typicality met where "all Plaintiffs' injuries arise out of the same series of events, the Data Breach").

#### d.     Adequacy of Representation

Rule 23(a)(4) requires the class representatives to "fairly and adequately protect the interests of the class."  A finding of adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *see also Astiana*, 291 F.R.D. at 503 (same).  Plaintiffs and Class Counsel satisfy these inquiries.

#### (1)     Named Plaintiffs Are Adequate Class Representatives

Plaintiffs have no conflicts of interests with Settlement Class Members and "possess the same interest and suffer[ed] the same injury as the class members." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009).  Indeed, Plaintiffs' and the Settlement Class Members' claims flow from the same underlying conduct – all allegedly suffered the compromise and/or theft of their PII due to Orrick's allegedly inadequate data security practices.  Plaintiffs' and the Settlement Class's interests are indisputably aligned.  Further, each Plaintiff has demonstrated their unwavering commitment to the Settlement Class by: (i) actively participating in vigorous prosecution of the action; (ii) reviewing documents and pleadings in the case; and (iii) participating in meetings with their attorneys and regularly communicating with them regarding litigation strategy, the status of the litigation, and major developments. Plaintiffs' adequacy is not subject to legitimate dispute.

#### (2)     Plaintiffs' Counsel Are Adequate

Plaintiffs' counsel are highly competent and have no conflicts of interest.  They have vigorously prosecuted this action to date.  Plaintiffs' counsel, as well as their firms, are experienced and sophisticated class action litigators that regularly prosecute and obtain significant victories for injured consumers, including in privacy and data breach cases. *See* ECF Nos. 40-1–40-4 (Attorney Biographies).  This Court previously adopted Plaintiffs' proposal designating this same slate of attorneys as Interim Lead Counsel and Interim Class Counsel.  [ECF No. 49]. Since their appointment, Plaintiffs' proposed Lead Class Counsel and Class Counsel have litigated this action

with skill and zeal, including by: (i) engaging in informal discovery; (ii) attending multiple days of mediation; (iii) conducting and completing a Rule 26(f) conference; (iv) drafting and filing a Statement of the Case; (v) working with other filed cases to consolidate these cases; and (vi); successfully mediating the case.  There is no reason to doubt proposed Class Counsel's adequacy.

### 2. Rule 23(b)(3) Certification of a Damages Class for Settlement Purposes Is Proper

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d at 1022.  Here, the Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy.  *Id.*; *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ("The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

Plaintiffs' claims depend, first and foremost, on whether Orrick used reasonable data security to protect their PII.  *See* Plaintiffs' Consolidated Complaint (ECF No. 53).  That question can be resolved using the same evidence for all Settlement Class Members, and thus is the precise type of predominant question that makes a class-wide adjudication worthwhile.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]").  To be sure, numerous courts have granted class certification in data breach cases, including two cases alleging violations of the CCPA.  *See, e.g.*, *Brinker*, 2021 WL 1405508, at \*14; *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at \*13 (M.D. Ala. Mar. 17, 2017) (certifying negligence class in data-breach suit), *aff'd on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017); *Kostka v. Dickey's Barbecue Restaurants, Inc.*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) *adopting report and recommendation* 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) (recommending certification class

claiming CCPA violations).

Importantly, predominance analysis in the settlement context need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. There is only the predominant issue of whether Orrick failed to properly secure the PII allegedly exposed in the Data Breach and failed to provide timely notice, such that individuals who were notified should now be provided a remedy. Resolution of that issue through individual actions is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review are too costly. *See Just Film*, 847 F.3d 1108 at 1123. Rather, the class device is the superior method of adjudicating consumer claims arising from this Data Breach – just as in other data breach cases where class-wide settlements have been routinely approved. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *6-7 (N.D. Cal. July 22, 2020), *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *12-13 (D. Or. July 29, 2019); *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3872788, at *11 (N.D. Cal. Aug. 15, 2018); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

## VII. THE PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to amended Rule 23(e)(2). Specifically, the Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the mailing and/or emailing of the Notice (the "Notice Date") | Within 60 calendar days after entry of the Preliminary Approval Order |
| Filing of memoranda in support of approval of the Settlement and in support of Class Counsel's application for an award of attorneys' fees and expenses and for Service Awards for Plaintiffs | 35 calendar days prior to the Objection Deadline |

| Event | Time for Compliance |
|---|---|
| Deadline for submitting objections or exclusion requests ("Objection Deadline") | 60 days after the Notice Date |
| Filing of reply memoranda in further support of the Settlement and in support of Class Counsel's application for an award of attorneys' fees and expenses and Service Awards | 7 days after the Objection Deadline |
| Final Approval Hearing | Approximately 90 calendar days after entry of the Notice Date, at the Court's convenience |
| Deadline for submitting Claim Forms | 90 calendar days after the Notice Date |

Plaintiffs respectfully submit that this proposed schedule complies with Rule 23 and Class Action Fairness Act, while securing the recoveries for Settlement Class Members in a timely fashion.

## VIII.   CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter an order substantially in the form of their proposed Notice Order, which is Exhibit D to the Agreement.

Date: May 31, 2024

/s/ William B. Federman
William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
(405) 235-1560

*Interim Lead Class Counsel and Proposed Lead Counsel for the Class*