William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

Lead Counsel for Plaintiffs and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ORRICK, HERRINGTON & SUTCLIFFE, LLP DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>All actions. | Case No. 3:23-cv-04089-SI<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS<br><br><br>Judge: Hon. Susan Illston<br>Date: November 8, 2024<br>Time: 10:00 AM<br>Courtroom: 1 – 17th Floor |

1

**NOTICE OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

2

3

PLEASE TAKE NOTICE that on November 8, 2024 at 10:00 a.m., or as soon thereafter

4

as the matter may be heard before the Honorable Susan Illston, in Courtroom 1 of the above-

entitled court, 17th Floor, located at San Francisco Courthouse, 450 Golden Gate Avenue, San

5

Francisco, CA 94102, Plaintiffs Dennis R. Werley, Robert D. Jensen, Rachel Mazanec, Scott

6

Morrissett, Kimberley L. McCauley, Robert Bass, Jody Frease, Joby Childress, and Cathi Soule

7

(collectively, "Plaintiffs"), will, and hereby do, move the Court under Federal Rule of Civil

8

Procedure 23 for an order granting: (a) an award of attorneys' fees, expenses, and service awards;

9

and (b) such other and further relief as this Court deems just and proper.

10

This Motion is supported by the Memorandum of Points and Authorities in Support of

11

Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, the declaration submitted

12

in support thereof, the accompanying Declaration of William B. Federman in Support of Plaintiffs'

13

Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and an

14

Award of Attorneys' Fees, Expenses, and Service Awards, the Agreement, all other pleadings and

15

matters of record and such additional evidence or argument as may be presented at the hearing on

16

the instant motion.

17

18

Dated: August 26, 2024

*/s/ William B. Federman*
William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

19

20

21

22

23

LEAD COUNSEL FOR PLAINTIFFS AND
THE CLASS

24

25

Robert S. Green (State Bar No. 136183)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

LIAISON COUNSEL FOR PLAINTIFFS
AND THE CLASS

William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

Lead Counsel for Plaintiffs and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: ORRICK, HERRINGTON & SUTCLIFFE, LLP DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>All actions. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:23-cv-04089-SI<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS<br><br>Judge: Hon. Susan Illston<br>Date: November 8, 2024<br>Time: 10:00 AM<br>Courtroom: 1 – 17th Floor |

**TABLE OF CONTENTS**

I. Introduction ..................................................................................................................... 1

II. Relevant Factual and Procedural Background ............................................................. 2

III. Settlement Class Members Will Be Significantly Compensated Through a Streamlined
    Claims Process ................................................................................................................ 4

IV. Applicable Legal Standards ........................................................................................... 5

V. The Requests Attorneys' Fee is Reasonable ................................................................ 6

    A. The Requested Fee is Reasonable Under the Percentage-of-Recovery Method.................... 7

    B. The Requested Fee is the 25.00% Benchmark of the Cash Relief Secured of the
        Benefit of the Settlement Class .................................................................................. 8

        1. Class Counsel Achieved an Exceptional Result ........................................... 10

        2. This Litigation was Risky and Presented Complex Issues of Law and Fact ................ 11

        3. Class Counsel Were Tenacious and Skilled in Their Representation of the
           Settlement Class ............................................................................................ 13

        4. Class Counsel Represented the Settlement Class on a Contingent Basis
           for Over a Year ............................................................................................. 15

        5. The Request is in Line with Other Awards .................................................. 16

        6. No Settlement Class Member Has Objected to the Fee ............................... 17

    C. A Lodestar Crosscheck Buttresses the Reasonableness of Requested Fee .......................... 18

    D. The Multiplier is Fair and Reasonable ............................................................................ 19

VI. The Requested Litigation Expenses are Fair and Reasonable .................................. 21

VII. The Service Awards are Reasonable ......................................................................... 22

VIII. Conclusion ................................................................................................................ 23

**TABLE OF AUTHORITIES**

CASES

*Acosta v. Frito-Lay, Inc.*
   2018 WL 646691 (N.D. Cal. Jan. 31, 2018) ............................................................. 21

*Beesley v. Int'l Paper Co.*
   2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ............................................................... 21

*Blum v. Stenson.*
   465 U.S. 886 (1984) ......................................................................................................... 7

*Boeing Co. v. Van Gemert*
   444 U.S. 472 (1980) ......................................................................................................... 5

*Broderick v. Mazur (PHP Healthcare).*
   No. CV-98-1658-MRP(AJWx) (C.D. Cal. Apr. 27, 2004) ................................... 17

*Buccellato v. AT&T Operations Inc.*
   2011 WL 3348055 (N.D. Cal. June 30, 2011) ................................................. 19–20

*Craft v. County of San Bernardino*
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................... 8, 16, 20

*Davis v. City and Cnty. of S.F.*
   976 F.2d 1536 (9th Cir.1992) .................................................................................. 20

*Fischel v. Equitable Life Assurance Soc'y*
   307 F.3d 997 (9th Cir. 2002) .................................................................................. 19

*Gascho v. Glob. Fitness Holdings, LLC*
   822 F.3d 269 (6th Cir. 2016) ..................................................................................... 9

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ............................................................................... 12

*Hefler v. Wells Fargo & Co.*
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018 ........................................................ 7

*In re Alstom SA Sec. Litig.*
   741 F. Supp. 2d 469 (S.D.N.Y. 2010) ................................................................... 16

*In re Am. Apparel, Inc. S'holder Litig.*
   No. CV 10-06352 MMM (JCGx), 2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................... 16

*In re Anthem, Inc. Data Breach Litig.*
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................................. 7, 9, 23

*In re Apollo Grp. Inc. Sec. Litig.*
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................................ 18

*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) ................................................................... *passim*

*In re Facebook Biometric Info. Priv. Litig.*
  2022 WL 822923 (9th Cir. Mar. 17, 2022) ......................................................... 19

*In re Genworth Fin. Sec. Litig.*
  210 F. Supp. 3d 837 (E.D. Va. 2016) .............................................................. 18

*In re Gilead Scis. Sec. Litig.*
  No. C-03-4999-SI (N.D. Cal. Nov. 5, 2010) ........................................................ 17

*In re Heritage Bond Litig.*
  2005 WL 1594389 (C.D. Cal. June 10, 2005) .................................................... 15, 17

*In re Immune Response Sec. Litig.*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................... 17

*In re JDS Uniphase Corp. Sec. Litig.*
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ....................................................... 16

*In re Lidoderm Antitrust Litig.*
  No. 14-md-02521-WHO (N.D. Cal. Sept. 20, 2018) ............................................. 18–19

*In re Lifescan, Inc. Consumer Litig.*
  No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) ..................................................... 17

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) .................................................................... 23

*In re Nasdaq Market-Makers Antitrust Litig.*
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 20

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*
  2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ....................................................... 22

*In re Omnivision Techs., Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................... 7, 11

*In re Online DVD-Rental Antitrust Litig.*
  779 F.3d 934 (9th Cir. 2015) .................................................................... 23

*In re Pac. Enters. Sec. Litig.*
  47 F.3d 373 (9th Cir. 1995) ..................................................................... 12

*In re Portfolio Recovery Assocs. Tel. Consumer Prot. Act Litig.*
   2017 WL 10777695 (S.D. Cal. Jan. 25, 2017) ....................................................11, 13, 15–16

*In re Quantum Health Res.*
   962 F. Supp. 1254 (C.D. Cal. 1997) ..................................................................................... 6

*In re Tyco Int'l, Ltd.*
   535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................................... 18

*In re Vioxx Prods. Liab. Litig.*
   2018 WL 4613941 (E.D. La. Sept. 26, 2018) .................................................................... 8–9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig..*
   No. 3:15-md-02672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .................................. 20

*In re Warner Commc'ns Sec. Litig.*
   618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................................... 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
   19 F.3d 1291 (9th Cir. 1994)..........................................................................................15, 20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
   2020 WL 4212811 (N.D. Cal. July 22, 2020)
   *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021)
   *and aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ............................ 8–9

*Kerr v. Screen Extras Guild, Inc.*
   526 F.2d 67 (9th Cir. 1975)............................................................................................19–20

*Kirchoff v. Flynn.*
   786 F.2d 320 (7th Cir. 1986)................................................................................................. 8

*Knight v. Red Door Salons, Inc.*
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .....................................................................21–22

*Loring v. City of Scottsdale*
   721 F.2d 274 (9th Cir. 1983).................................................................................................. 9

*Low v. Trump Univ., LLC.*
   246 F. Supp. 3d 1295 (S.D. Cal. 2017)
   *aff'd*, 881 F.3d 1111 (9th Cir. 2018) .................................................................................. 23

*Lucero v. Solarcity Corp.*
   2018 WL 573593 (N.D. Cal. Jan. 26, 2018) ....................................................................... 16

*Maley v. Del Global Techs. Corp.*

186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 17

*Siracusano v. Matrixx Initiatives, Inc.*
No. CV-04-0886-PHX-NVW (D. Ariz. Nov. 13, 2012) .............................. 16–17

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
904 F.2d 1301 (9th Cir. 1990) ......................................................................... 5–6

*Smith v. Am. Greetings Corp.*
2016 WL 362395 (N.D. Cal. Jan. 29, 2016) ......................................................... 9

*Stanger v. China Elec. Motor, Inc.*
812 F.3d 734 (9th Cir. 2016) ............................................................................. 19

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003).............................................................................. 22

*Stetson v. Grissom.*
821 F.3d 1157 (9th Cir. 2016) ........................................................................... 19

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*
No. CV-99-07796-FMC(RNBx) (C.D. Cal. Oct. 17, 2005) ............................... 17

*Van Kraken v. Atl. Richfield Co.*
901 F. Supp. 294 (N.D. Cal. 1995) ........................................................8, 16, 20

*Vincent v. Reser*
2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...................................................... 22

*Vizcaino v. Microsoft Corp.*
290 F.3d 1043 (9th Cir. 2002) .....................................................................*passim*

*Wakefield v. Wells Fargo & Co.*
2015 WL 3430240 (N.D. Cal. May 28, 2015)..................................................... 21

*Wershba v. Apple Computer*
91 Cal. App. 4th 224 (2001)............................................................................... 20

*Willner v. Manpower Inc.*
No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015).......................... 21

*Wing v. Asarco Inc.*
114 F.3d 986 (9th Cir. 1997)............................................................................... 14

*Wren v. RGIS Inventory Specialists*
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .................................................................... 9

OTHER AUTHORITIES

American Law Institute, *Principles of the Law of Aggregate Litigation* §3.13(b) (2010) ................. 7

Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
    7 J. EMPIRICAL L. STUD. (2010) .................................................................................. 8, 16

Cal. Civ. Code § 3289 ................................................................................................................. 22

Fed. R. Civ. P. 23(h) ................................................................................................................... 21

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*,
    65 Fordham L. Rev. 247, 248 (1996) .......................................................................... 17

## I.     INTRODUCTION

All consumer class actions should strive to reach what Plaintiffs[1] and Class Counsel have accomplished here: a non-reversionary cash common fund that provides significant cash payouts to the Settlement Class Members and meaningful remedial measures. The non-reversionary cash common fund of ***$8,000,000.00*** is an exceptional result following two days of mediation separated by months of negotiations, research, exchanges of discovery, and challenging conversations between Defendant's Counsel and the mediator regarding the issues in this case. In addition to the cash common fund, Plaintiffs and Class Counsel achieved meaningful remedial measures that ensure that Orrick's data security infrastructure – which continues to hold Plaintiffs' and Settlement Class Members' personal identifying information ("PII") – is as secure as possible.

Class Counsel fought hard to secure these benefits for the Settlement Class in a timely fashion, all on a contingency basis. Due to Class Counsel's honed skills, background in the field of data breach litigation, and persistent efforts, Class Counsel obtained meaningful and timely relief in this case. The extended negotiations were at arms' length, often tense, and the Parties reached a Settlement only after experienced mediator Anthony Piazza worked with the Parties for two days in mediation and over two months in between the mediation dates. Through the efforts of Class Counsel and their hard work securing an excellent result against a very well-respected national defense law firm with extensive expertise defending data breach class action, the Settlement was reached consisting of a non-reversionary common fund of $8 million and important remedial measures. Class Counsel requests a reasonable attorneys fee of 25.00% of only the cash value of the Settlement – not including the highly valuable remedial measures – which is a fair multiplier of 3.5 to their collective lodestar. Class Counsel's lodestar does not include additional time that will be spent working with the Settlement Administrator and Settlement Class Members, which will likely include more than 100 hours of additional attorney time. Class Counsel also seek reimbursement of their expenses in the amount of $31,500.86, plus interest starting from the date the expenses were incurred to the date

---

[1]    Capitalized terms shall have the same meaning as set forth in the Agreement, unless otherwise noted.

4847-2688-4817

of final approval, and the approval of service awards for each Plaintiff in the sum of $22,700.00 ($2,500.00 for each named Plaintiff).

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Class Counsel undertook this large and complex action on a contingency basis litigating a very complex case against one of the largest international law firms.[2] Class Counsel used their experience and skills to obtain a very meaningful and timely resolution for the Class Members. Prior to reaching a settlement, Class Counsel: (a) investigated the Data Incident; (b) interviewed witnesses and Class Members; (c) prepared informal discovery requests and negotiated discovery with Defendant's Counsel; (d) reviewed and analyzed thousands of pages of documents from Defendant and obtained from their background investigation; (e) interviewed and selected expert witness for cybersecurity, damages, and class certification; (f) worked with Plaintiffs, Plaintiffs' Counsel and Class Members to determine relevant damages arising from the Data Breach; (g) analyzed Defendant's statutory, regulatory, ethical and common-law duties to securely maintain Class Members' PII; (h) researched Defendant's defenses and affirmative defenses, including Defendant's potential success for future motions, including a motion to dismiss, opposition to class certification, motion for summary judgment, and motion to strike Plaintiffs' experts; and (i) engaged in long and tedious arms'-length negotiations.  Federman Decl., ¶¶ 3, 7–8, 12–13, 14, 20, 43.

Upon conducting a thorough investigation of the claims in this case, Lead Class Counsel filed the first-filed case (this Action) alleging claims arising from a data incident involving Orrick's system. *Id.* at ¶ 4. Soon after a second related action was filed, Lead Class Counsel quickly consolidated the additional action into the first-filed case. *Id.* at ¶¶ 5–6. Lead Class Counsel continued investigating the claims in the Action, vetting potential lead plaintiffs, and conducting

---

[2]    Defendant Orrick is a well-renowned, globally known law firm with significant experience in data breach litigation. *See generally* Orrick, https://www.orrick.com/. Defendant's Counsel, Alston & Bird, is also well known in the data breach litigation field (*see generally* Alston & Bird, https://www.alston.com/en/) with experienced data breach attorneys (*see, e.g.*, Alston & Bird, Kristine McAlister Brown, Experience, https://www.alston.com/en/professionals/b/brown-kristine-mcalister (noting that Ms. Brown has obtained complete dismissal of a nationwide data breach class action in the Ninth Circuit).

meaningful discussions with Defense Counsel. *Id.* at ¶ 7. Due to Lead Class Counsel's efforts and vigilance, Plaintiffs obtained significant informal discovery early in this case. *Id.* at ¶¶ 8–9. Lead Class Counsel continued to prosecute this case, incurring substantial time and expenses, before and after the Parties agreed to early mediation. *Id.* at ¶ 10. To adequately prepare for mediation and zealously advocate for Plaintiffs and the Class Members, Federman & Sherwood spent a month researching the factual and legal issues in this case and preparing a lengthy and informative mediation statement to educate the mediator. *Id.* at ¶ 12–13.

On October 16, 2023, the Parties met before mediator Anthony Piazza for a full day of mediation that ran over 10 hours long. *Id.* at ¶ 14. The mediation began with submitting position papers to the mediator, then the Parties discussed face-to-face the issues in this case. *Id.* After unsuccessful conversations, Mr. Piazza separated the Parties and began discussing the case with each party individually. *Id.* Lead Class Counsel spent many hours with Mr. Piazza, informing him of the strengths of Plaintiffs' and the Class Members' claims and educating him on the relevant case law. *Id.* Mr. Piazza noted Lead Class Counsel's substantial knowledge and understanding of the data breach field and challenged the assertions made, similar to what would take place during litigation in this case. *Id.* The day proved tedious and stressful as both parties argued complex areas of fact and law with each other and with the mediator. *Id.* Ultimately, although some progress was made, the day did not result in a settlement as both Parties zealously advocated for their respective client(s) and did not agree on a damages model nor the ability of Plaintiffs to succeed in the litigation. *Id.*

Although the first mediation session did not result in a resolution of the case, the mediator believed that sufficient progress was made to warrant a second mediation session. *Id.* at ¶ 19. Between the two mediation sessions, the mediator challenged both sides to support their positions and requested additional information. *Id.* at ¶ 15. Based on the discussions from the prior mediation, Lead Class Counsel spent months conducting research on the matters and provided Mr. Piazza with multiple memorandums on Plaintiffs' damages, the legal implications of CCPA claims, and Defendant's duties and liability under relevant law. *Id.* During this time, other law firms filed the Related Actions. *Id.* at ¶ 18. Lead Class Counsel was well entrenched in litigation before the additional cases were filed.

*See id.* at ¶ 3, 7–8, 15–16. Lead Class Counsel took immediate steps to consolidate these actions and work with the other law firms to avoid unnecessary delay and duplication of efforts and litigation expenses. *Id.* at ¶ 18.

Mr. Piazza, after receiving additional information from the Parties, invited the Parties back to mediation on December 14, 2023. *Id.* at ¶ 20. Again, the Parties were not able to come to an agreement, and Lead Class Counsel prepared to continue prosecuting this case. *Id.* Due in large part to Class Counsel's efforts, experience, developed information, and legal work, Mr. Piazza made a mediator's proposal and gave the Parties time to consider his proposal. *Id.* at ¶ 21. The mediator's proposal, which was eventually agreed to by the Parties after consultation with their respective clients, is based on a substantial cash Settlement Fund of $8,000,000.00 with additional meaningful remedial measures (including enhanced security infrastructure and managed detection and response) that Class Counsel negotiated directly with Defense counsel and in consultation with the mediator. *Id.* at ¶ 22–23.

Although this Action took place largely outside of the courtroom, the Action was clearly hard-fought from inception, and the extensive efforts of Plaintiffs and Class Counsel are reflected in the impressive resolution achieved. To date, Lead Class Counsel continues to spend a large amount of time and resources ensuring that Class Members received Notice of the Settlement, including answering questions from the Settlement Administrator and Class Members, and assisting Class Members with navigating the Settlement Website and completing the Claims Form.

## III.   SETTLEMENT CLASS MEMBERS WILL BE SIGNIFICANTLY COMPENSATED THROUGH A STREAMLINED CLAIMS PROCESS

The proposed Settlement secures significant cash payments from the Settlement Fund and meaningful injunctive relief to better protect their PII that remains in Orrick's possession. Based on the claims rate to date, each Settlement Class Members will receive over $75.00.[3] *Id.* at ¶ 40.

---

[3]   Although Settlement Class Members who make a claim will likely receive in excess of $75.00 per claim, the Notice clearly explained that the amount could potentially be less than $75.00 depending on the number of valid claims submitted.

The Settlement also provides three years of three bureau credit monitoring for Settlement Class Members who submit a Valid Claim. *Id.* at ¶ 29.

The Settlement provides cash payments to Settlement Class Members who complete a simple, straightforward claims process. *Id.* at ¶ 34. Critically, Settlement Class Members are ***not*** required to identify any specific harm they may have suffered due to the Data Incident to qualify for a cash payment. *Id*. The fact that a Settlement Class Member's PII was potentially impacted in the Data Incident is sufficient. *Id.* Settlement Class Members have the option to provide documentation and information showing damages resulting from the Data Breach to qualify for further monetary relief. *Id.* at ¶ 30.

## IV.    APPLICABLE LEGAL STANDARDS

It is well established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[4] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (same). "[T]he choice between lodestar and percentage calculation depends on the circumstances, but . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The Ninth Circuit also "encourage[s] courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944-45.

Where the percentage-of-recovery method is employed, it is well established that 25.00% of the common fund is the benchmark award of attorneys' fees. *See, e.g.*, *id.* at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six (6)*

---

[4]    Citations and internal quotation marks are omitted, and emphasis is supplied throughout, unless otherwise noted.

*Mexican Workers*, 904 F.2d at 1311 (same). Although the 25.00% benchmark is a starting point, *Vizcaino*, 290 F.3d at 1048, upward departures may be warranted. *In re Quantum Health Res.*, 962 F. Supp. 1254, 1257–58 (C.D. Cal. 1997).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. The Court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941–42.

Whether the Court utilizes the 25.00% benchmark or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has identified five factors that may inform this inquiry: (1) the results achieved; (2) the risk of the litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Id.* at 1048–50.

**V.     THE REQUESTED ATTORNEYS' FEE IS REASONABLE**

On May 31, 2024, the Court granted preliminary approval of the Settlement, and the Notice of Settlement, which informed Settlement Class Members that Class Counsel would seek attorneys' fees of up to $2,000,000.00, or 25.00% of the cash portion of the Settlement, expenses in an amount not to exceed $50,000.00, and service awards not to exceed $2,500.00 for each Class Representative ($22,500.00 in the aggregate). *See* ECF No. 67; *see also* ECF No. 63, p. 4. Although the objection deadline has not passed and Plaintiffs will respond to any objections to the Settlement or the fee request in their reply brief, thus far, in contrast to the over 630,000 Settlement Class Members and the 11,824 claims received to date, no objections to the requested fees or

expenses have been filed.[5]  *See infra* §V.B.6.  Plaintiffs respectfully ask the Court to exercise its discretion to award the full amounts requested here.

**A.    The Requested Fee is Reasonable Under the Percentage-of-Recovery Method**

The Supreme Court has long held that, in common fund cases class counsel is entitled to a reasonable fee based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Consistent with this long-standing rule, the Ninth Circuit has consistently approved awards of attorneys' fees using the percentage-of-recovery method. *See, e.g.*, *Vizcaino*, 290 F.3d at 1047–48. In recent years, this method has become the preferred one. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (recognizing the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees); American Law Institute, *Principles of the Law of Aggregate Litigation* §3.13(b) (2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases.").

The percentage-of-the-fund approach offers several advantages which militate in favor of its use as the principal method for determining the reasonableness of Class Counsel's fee request. First, it reduces the burden on this Court to undertake the painstaking process of applying the lodestar method. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (reasoning that courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *In re Bluetooth*, 654 F.3d at 942. Moreover, other data breach settlements have found the lodestar method to be less suitable for these types of complex cases.  *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) ("[T]he combination of novel legal issues and technical subject matter present in the instant [data breach] case counsels against the lodestar method because there is no set baseline against which to compare whether hours were reasonably expended."); *but see In re*

---

[5]   As discussed below, the Settlement Administrator has received one (1) opt-out and one (1) objection. The objection does not object to the request for attorney fees, expenses, or service awards.

*Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at \*40 (N.D. Cal. July 22, 2020), *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021), *and aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (awarding 1.15 multiplier to class counsel's lodestar). The percentage approach also offers the significant benefit of aligning the interests of class counsel with the class they represent. *Cf. Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) (a contingency fee "automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure"). The percentage method also mimics the private marketplace where contingent fee plaintiffs' attorneys are customarily compensated 33.00% to 40.00%.

To apply the percentage method, the Court selects a reasonable percentage considering all the circumstances of the case, multiplies the gross settlement amount by that percentage, and awards class counsel the resulting amount. Based on empirical research, most fee awards range between 25.00% and 35.00%. Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 833, 838 (2010). Indeed, courts in this Circuit have noted that "[c]ases of under $10 Million will often result in fees above 25%." *Craft v. Cnty. Of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *see also Van Kraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297–98 (N.D. Cal. 1995) (noting awards of "30-50 percent of the fund" where the funds were "less than $10 million").

Here, as explained below, the requested fee is fair and reasonable under all circumstances of this case. The requested fee is 25.00% of the cash portion of the Settlement only. No fee is being sought for the additional remedial benefits provided to the Class by Lead Counsel's efforts. This amount is fair and reasonable based on significant monetary relief obtained on behalf of the Class, the meaningful injunctive relief, and the circumstances of this Litigation.

**B.     The Requested Fee is the 25.00% Benchmark of the Cash Relief Secured for the Benefit of the Settlement Class**

As Judge Fallon explained in the *Vioxx* case:

Consumer class actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes

that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated – even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small).

*In re Vioxx Prods. Liab. Litig.*, 2018 WL 4613941, at *8 (E.D. La. Sept. 26, 2018) (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 286 (6th Cir. 2016).

Here, Class Counsel worked hard and expeditiously to move this class action forward and obtained a meaningful resolution for the Class Members in a very timely manner. Class Counsel aggressively prosecuted the Action and negotiated with a nationally renowned law firm and experienced counsel who spared no expense or argument in defense of Plaintiffs' allegations. Class Counsel's efforts were clearly effective, as evidenced by Plaintiffs' arrival at a bargaining position strong enough to negotiate a cash Settlement of $8,000,000.00 plus remedial measures following two extensive mediation sessions separated by months of negotiations and additional work. The Settlement provides the Class with significant monetary relief via the $8 million cash common fund, and the substantial injunctive relief specifically addressing Orrick's data security, which provides vital protection for Class Members' PII that may remain in Defendant's possession. For their efforts, Class Counsel should receive the benchmark amount of 25.00% of the monetary Settlement.

This requested amount does not account for the additional benefits that Class Counsel obtained on behalf of the Class in the form of substantial remedial measures.[6] As a result of the

---

[6]    The Ninth Circuit has held that courts should "take into account the present nonmonetary benefit bestowed upon plaintiffs' class" when evaluating the appropriateness of a fee award. *Loring v. City of Scottsdale*, 721 F.2d 274, 275 (9th Cir. 1983). Courts in this Circuit routinely grant upward departures from the 25.00% benchmark where settlements include both monetary compensation and injunctive relief that significantly remedies the corporate policies that gave rise to the lawsuit. *See In re Anthem*, 2018 WL 3960068, at *8 ("[T]he Court elects to consider the value of this nonmonetary relief as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees"); *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *8-9 (N.D. Cal. Jan. 29, 2016) ("In addition to compensating Plaintiffs . . . , class counsel's efforts have remedied many of the corporate policies that led to this lawsuit. These benefits support an upward departure from the Ninth Circuit's 25% standard."); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving settlement with an average award to class members of $207.69 and 42% of the settlement amount as attorneys' fees because, in part, "the results achieved . . . include both monetary and injunctive

Action, Orrick enhanced its data security infrastructure by improving its detection and response tools, enhancing its continuous vulnerability scanning at both the network and application levels, deploying additional endpoint detection and response software, and performing additional 24/7 network managed detection and response. *Settlement Agreement*, [ECF No. 63-1, ¶ 8.1]. These remedial measures benefit every Class Member, regardless of whether the Class Member submits a Claim under the Settlement. These measures will provide enhancements to Orrick's data security infrastructure. *See* Federman Decl. at ¶ 29.

Here, Class Counsel's request for attorneys fees does not consider these substantial remedial measures. Rather, Class Counsel seeks the benchmark amount of 25.00% of the monetary Settlement as compensation for their time, substantial efforts, and results rendered on behalf of the Class. This request is fair and reasonable considering (1) the exceptional results of this Settlement, (2) the risks associated with this case and complex issues of fact and law, (3) Counsel's tenacious and skilled representation in the case, (4) the contingency nature of the case, (5) other similar awards in data breach cases, and (6) no objections to the request.

### 1.    Class Counsel Achieved an Exceptional Result

The results achieved by Class Counsel for the benefit of the class is the single most important factor in evaluating the reasonableness of the attorney fee. *See, e.g.*, *Bluetooth*, 654 F.3d at 942; *Vizcaino*, 290 F.3d at 1048. This factor weighs heavily in favor of approving the full amount of the requested fee in this matter.

Here, the Settlement provides a fair, reasonable, and adequate result for and is in the best interests of the Settlement Class. The Settlement provides for an $8,000,000.00 cash non-reversionary Settlement Fund, (from which Settlement Class Members who submit a valid and timely claim form will receive at least $75.00 in cash, likely to be increased on a pro rate basis considering the number of claims submitted to date) without considering the value of the remedial measures. Federman Decl.*,* at ¶¶ 29, 40. Settlement Class Members who submit additional

---

relief"); *see also In re Yahoo!*, 2020 WL 4212811, at *33 ("The Court considers the value of these [nonmonetary] benefits in assessing the proper [lodestar] multiplier").

documentation and information regarding damages resulting from the Data Incident may be entitled to more monetary relief. *Id.* at ¶ 30. As noted in Plaintiffs' Motion for Preliminary Approval, this settlement exceeds the standard settlement amount in other data breach cases. ECF No. 63, pp. 10–11 (comparing other settlement amounts).

Settlement Class Members may also submit a claim for three years of three bureau credit monitoring. Credit monitoring is a major component of identity protection. This relief gives Settlement Class Members peace-of-mind that they can identify and track any potential misuse of their PII. *Id.* at ¶¶ 29, 37, 57. The immediacy of this relief is also of significant value, as Class Members do not have to wait to start protecting themselves from identity theft. *Id.*

Plaintiffs have also secured extremely valuable injunctive relief that requires Orrick to enact significant changes to its business practices designed to enhance Orrick's data security infrastructure. *Id.* at ¶ 29. This injunctive remedial relief provides substantial benefits to the Class by securing Class Members' PII against future unauthorized access and exfiltration attempts.

The result achieved is highly favorable, both substantively and procedurally, especially considering the time value of money. The Settlement provides *immediate* and *speedy* benefits to the Settlement Class without further delay, additional fees and expenses, the uncertainty of ongoing litigation in this Court, and the lengthy appeals that would inevitably follow a trial verdict. *Id.* at ¶¶ 33, 37, 57. The fact that Lead Counsel achieved such a favorable result through the compromise of contested claims against formidable adversaries weighs strongly in favor of an award of the full amount of attorneys' fees requested.

### 2. This Litigation Was Risky and Presented Complex Issues of Law and Fact

Courts also consider the risk and complexity of the issues of law and fact as a relevant factor in evaluating the reasonableness of fee requests. *In re Portfolio Recovery Assocs. Tel. Consumer Prot. Act Litig.*, 2017 WL 10777695, at *1 (S.D. Cal. Jan. 25, 2017) (citing *Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance" for an award of fees)). The "prosecution and management of a complex national class action requires unique legal skills and abilities" that are to be considered when determining a reasonable fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at

1047 (citation omitted). The Ninth Circuit has made clear that the particular circumstances of a case relating to this factor may justify the full 25.00% benchmark rate, if not an upward departure the benchmark. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (the "complexity and novelty of the issues" may justify upward departure); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% based on "complexity of the issues and the risks").

This case presented extraordinary challenges that required extraordinary lawyering. In general, data breach class actions present relatively unchartered territory, and no data breach case has gone to trial. Data breach cases are especially risky, expensive, and complex because data breach law is constantly evolving and there are numerous hurdles that Plaintiffs must overcome before getting to trial, including class certification and summary judgment. Moreover, this Action involved novel issues which were briefed and debated by Lead Class Counsel outside of the Court, including Defendant's liability to Plaintiffs. Federman Decl., ¶¶ 12, 15.

Class Counsel took this case, timely consolidated additional filed actions, and engaged in meaningful and efficient discovery of the issues in this case, despite the significant risks associated with data breach litigation. Although Plaintiffs and Class Counsel believe their claims could have ultimately prevailed on the merits, they are also cognizant of the time and expense that would have been required to prosecute this action through summary judgment, trial, and any subsequent appeals, as well as the difficulties and delays inherent to the litigation and claims processes. *Id.* at ¶¶ 33.

The impressive result obtained by Class Counsel here was no *fait accompli*. This Action raised complex issues of law and fact that required great skill to maneuver, including novel issues yet to be fully litigated. Indeed, Defendant's Counsel stood ready to pursue numerous avenues of legal and factual attacks against the named Plaintiffs and the claims, including an eventual motion to dismiss, an opposition to any future motion for class certification, and motion for summary judgment. *Id.* at ¶ 17.

Among other risks, Class Counsel faced the possibility that Plaintiffs' future motion for class certification could have been denied, or reversed on appeal, leaving Plaintiffs with a narrowed

class or no class at all – a result which would have deprived the Class of any recovery whatsoever or, at best, significantly reduced the value of any subsequent settlement. *Id.*

Class Counsel is also cognizant that bringing any case to trial involves inherent risks, including the possibility that the jury fails to return a unanimous verdict in Plaintiffs' favor. *Id.* In complex litigation, even a victory at trial does not spell ultimate success. Both trial and judicial review are unpredictable and can erode a recovery or eliminate it altogether. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985).

The outcome of this Action was far from predestined. Plaintiffs unquestionably faced an uncertain road with a possible motion to dismiss, difficult discovery addressing attorney/client privileges, class certification, summary judgment, and any appeals. Class Counsel worked diligently to achieve an excellent result in the face of substantial risks. Accordingly, this factor also weighs in favor of awarding the requested fee.

### 3. Class Counsel Were Tenacious and Skilled in Their Representation of the Settlement Class

The quality of the representation by Class Counsel is another important factor that supports the reasonableness of the requested fee here. *Portfolio Recovery Assocs.*, 2017 WL 10777695, at *1.

It is no accident that this Settlement is so favorable to the Settlement Class. There is a straight line from the quality of the representation by Class Counsel to the result achieved. As this Court knows, Class Counsel are very capable attorneys with many decades of experience. Class Counsel include attorneys nationally recognized by the bench and bar for their extensive experience in class actions, including data breach and privacy cases. *See Class Counsel's Resumés*, ECF No. 40-1–40-3 (listing Class Counsel's qualifications and cases).

Lead Class Counsel took on the brunt of this case. As detailed above, *supra* § II, Lead Class Counsel engaged in substantial research, investigations, plaintiff vetting, informal discovery, out of court briefing, discussions, and negotiations regarding the claims in this case. It was from Lead Class Counsel's tenacious and skilled representation of Plaintiffs and the Class that Lead Class Counsel was able to obtain such a favorable settlement. After working diligently to represent the

1   Class and obtain relief, Lead Class Counsel has continued to serve the Class Members to finalize

2   this Settlement.

3           Lead Class Counsel worked with Class Counsel and Defendant to negotiate and finalize

4   the Settlement and Notice program. Federman Decl., ¶¶ 24, 44. Lead Class Counsel took bids from

5   a number of claims administrators and negotiated a favorable bid with an experienced

6   administrator. *Id.* at ¶ 26. Class Counsel gathered information to ensure that the notice plan

7   provided the best notice available to the Class. *Id.* at ¶ 44. Throughout the process, Class Counsel

8   worked together to finalize the Settlement Agreement and notice plan to comply with all governing

9   laws and to the benefit of the Class. *Id.*

10           To date, Lead Class Counsel continues to serve the Class Members and protect the best

11   interests of the Class. With a class this size, Lead Class Counsel continues to receive calls and

12   emails from Class Members with questions about the Settlement and requests to discuss the

13   Settlement. *Id.* at ¶¶ 39, 46. Class Counsel continues to work diligently to ensure that Class

14   Members' questions and concerns are resolved to the best of their ability and work with the Claims

15   Administrator to do so. *Id.*

16           The quality of defense counsel is also considered in assessing the reasonableness of the

17   requested fee.  *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (evaluating class

18   counsel's work in context of "the quality of opposition counsel and [defendant's] record of success

19   in this type of litigation"). Here, Plaintiffs were opposed by the preeminent data breach national

20   defense firm, Alston & Bird, representing one of the largest U.S. based international law firms

21   with deep experience and expertise in technology law, particularly data breach litigation, who

22   spared no expense or argument in defense of their client. Federman Decl., ¶17. Class Counsel has

23   litigated multiple data breach class actions against Alston & Bird where the cases, legal issues, and

24   claims are hard and long fought, including extensive involvement by the court with multiple

25   discovery and dispositive motions filed by both sides. *Id.* This case would have been no different.

26   Class Counsel had meaningful and difficult discussions with Defense Counsel regarding the legal

27   and factual issues in this case, including standing, Defendant's liability, damages, experts, and the

28   possibility of class certification. *See id.* at ¶ 14.

The subject matter involved in litigating this case was highly technical, involving extensive facts about Defendant's cybersecurity platform and practices, and requiring the consultation of cybersecurity and damages experts. As detailed below, Class Counsel undertook immense efforts in document review, discovery, drafting pleadings, discussions with Class Members, and negotiations.

In the face of formidable opposition, the complexity and uniquely challenging nature of this particular data breach class action, the responsibility and risk undertaken, and the difficulty in proving liability and damages, Class Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Orrick to agree to a comprehensive settlement that provides for significant monetary benefits ***and*** valuable injunctive relief. *Id.* at ¶ 29. Accordingly, this factor also weighs in favor of awarding the requested fee.

### 4. Class Counsel Represented the Settlement Class on a Contingent Basis for Over a Year

This Court has also recognized that contingent representation and the burden carried by class counsel may warrant an upward adjustment to the benchmark percentage. *See Portfolio Recovery Assocs.*, 2017 WL 10777695, at *1. As the Ninth Circuit has explained:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."). The risk of non-payment is even more pronounced in complex class actions, like this one, as they are highly technical, expert-intensive, and protracted. Contingent counsel advance their time, effort, and expenses to subsidize litigation that face many substantive challenges.

For all these reasons, the risk of getting paid nothing or not recovering their expenses in a case like this is real. There are many instances in which Class Counsel have expended thousands of hours and yet were paid nothing. For example, in a class case against JDS Uniphase Corporation, the plaintiffs made it past the pleading and summary judgment stages only to lose at trial. *See In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). Even the most promising case can be eviscerated by a sudden change in the law after years of litigation. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing extensive discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

Because Class Counsel undertook their representation on a contingent fee basis, the only certainty was there would be no fee without a successful result, and no successful result without years of sustained hard work and skillful effort. Federman Decl., ¶¶ 53–57. In the meantime, Class Counsel advanced the costs ($31,500.86) and worked over 700 hours over the past year. *Id.* at ¶¶ 45, 52. "This type of substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees." *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014).

### 5.     The Requested Fee is in Line with Other Awards

This Court has recognized that a requested fee may also be supported by awards in similar cases. *Portfolio Recovery Assocs.*, 2017 WL 10777695, at *1. This factor considers the percentages awarded in other class actions and contingency-fee agreements in individual cases. *See Vizcaino*, 290 F.3d at 1049–50.

As to the former, empirical research shows that the majority of fee awards in common fund settlements range from between 25.00% and 35.00%. *See* Fitzpatrick, 7 J. Empirical L. Stud. At 833, 838, *supra*. However, courts in this Circuit have noted that "[c]ases of under $10 Million will often result in fees above 25%." *Craft*, 624 F. Supp. 2d at 1127; *see also Van Kraken*, 901 F. Supp. at 297–98. And this Court has previously adjusted fees awards upwards, with more modest results than what was achieved here. *See Portfolio Recovery Assocs.*, 2017 WL 10777695, at *1. Other

Ninth Circuit courts have departed from the benchmark and awarded fees of 30% or more in class actions. *See, e.g.*, *Lucero v. Solarcity Corp.*, 2018 WL 573593 (N.D. Cal. Jan. 26, 2018) (fee award of 30%); *Siracusano v. Matrixx Initiatives, Inc.*, No. CV-04-0886-PHX-NVW (D. Ariz. Nov. 13, 2012) (slip op) (fee award of 30%); *In re Gilead Scis. Sec. Litig.*, No. C-03-4999-SI (N.D. Cal. Nov. 5, 2010) (slip op) (fee award of 30%); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, No. CV-99-07796-FMC(RNBx) (C.D. Cal. Oct. 17, 2005) (slip op) (fee award equal to 33% of recovery); *Broderick v. Mazur (PHP Healthcare)*, No. CV-98-1658-MRP(AJWx) (C.D. Cal. Apr. 27, 2004) (slip op) (fee award of 30%); *In re Lifescan, Inc. Consumer Litig.*, No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) (slip op) (fee award of 33%).

As to the latter category of analogous fee awards, the requested fee is at the low end of the prevailing percentage for standard contingency-fee agreements in individual cases. *See Vizcaino*, 290 F.3d at 1049. Surveys have estimated that contingency-fee percentages in individual litigation start at 33.00% and go up to 40.00%. *See, e.g.*, Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 Fordham L. Rev. 247, 248 (1996) ("standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries").

Thus, the requested fee is supported by awards in similar cases and the private marketplace for contingency fee work.

### 6.    No Settlement Class Member Has Objected to the Fee

Finally, courts have considered the class's reaction in awarding fees. *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award."). While some objections are to be expected in a class action of this size, "the absence of a large number of objections to a proposed [class] action settlement raises a strong presumption that the terms of a proposed class action settlement are . . . favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Here, while the objection deadline is September 30, 2024, to date not one Settlement Class Member has opposed the fee request.[7] This is not for lack of information or interest in the Settlement. Indeed, Settlement Class Members received notice through the Court-approved notices that Class Counsel would seek these amounts in attorney fees, expenses, and service awards, and were also informed about what they could do if they disagreed. ECF No. 63. Instead of objecting to these requests, thus far Settlement Class Members have demonstrated substantial approval of the Settlement as evidenced by the 11,824 claims submitted combined with only one (1) opt-out to date. Federman Decl., ¶ 41.[8] Accordingly, this factor also supports an award of the requested fee.

**C.  A Lodestar Crosscheck Buttresses the Reasonableness of the Requested Fee**

The reasonableness of the fee request is also supported by a lodestar crosscheck (or lodestar method, if the Court prefers). *See Vizcaino*, 290 F.3d at 1050 ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case.  The cross-check then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016).  When the lodestar is used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007).[9]

Here, a lodestar cross-check demonstrates that the requested fee is reasonable. Class Counsel have spent 701.2 hours to date prosecuting and resolving this Action from its inception

---

[7]  One class member filed an objection to the Settlement. However, the objection does not oppose the fee request or requested service awards.

[8]  Should any Settlement Class Member later file a timely and valid objection, Plaintiffs will address such objection in their reply papers.

[9]  *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012) ("[A]n itemized statement of legal services is not necessary for an appropriate lodestar cross-check").

through the date of this filing, August 26, 2024. Federman Decl., ¶ 45 & Ex. A. Based on Class Counsel's standard rates, this amounts to a lodestar of $565,112.30.[10] *Id.* This does not include all the time that will be spent preparing for and attending the final approval hearing, overseeing the claims review and distribution process, and assisting Settlement Class Members until every last check is cashed, which is estimated to be in excess of 100 hours or in excess of $100,000.00. *Id.* at ¶ 46.

### D.     The Multiplier is Fair and Reasonable

"'The district court *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.' Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (quoting *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016), and *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002)). As discussed above, this case presented a significant risk of prosecution and the complexity of this case required experienced legal skills and high-quality work.

Class Counsel's requested fee award in the amount of $2,000,000 equates to a fair multiplier of less than 3.5 when the additional time is taken into account to Class Counsel's actual lodestar of $565,112.30. The Ninth Circuit recognizes the appropriateness of an upward multiplier where, as here, certain risk and reasonableness factors are present, such as the result achieved for the class, quality of representation, and complexity of the issues. *See Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Thus, courts routinely approve multipliers of up to 4, and sometimes more. *See, e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 2022 WL 822923, at *1-*2 (9th Cir. Mar. 17, 2022) (affirming 4.71 multiplier in class action privacy case); *Vizcaino*, 290 F.3d at 1051 (approving

---

[10]    Class Counsel's hourly rates are reasonable as they are in line with the hourly rates approved by California federal courts in other class action settlements. Federman Decl., ¶ 48. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, slip op. at 3 (N.D. Cal. Sept. 20, 2018) (approving rates from $350 to $1,050 for partners, $300 to $675 for associates, and $100 to $400 for paraprofessionals).

1    3.65 multiplier and finding most multipliers range from 1 to 4); *Buccellato v. AT&T Operations,*
2    *Inc.*, 2011 WL 3348055, at *1-2 (N.D. Cal. June 30, 2011) (a "multiplier of 4.3 is reasonable");
3    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) & Appendix (approving
4    multiplier of 3.65 and citing cases with multipliers as high as 19.6); *In re Volkswagen "Clean*
5    *Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-md-02672, 2017 WL 1047834, at *5
6    (N.D. Cal. Mar. 17, 2017) ("'Multipliers in the 3-4 range are common in lodestar awards for lengthy
7    and complex class action litigation.'") (quoting *Van Vranken*, 901 F. Supp. at 298–99); *Craft*, 624
8    F. Supp. 2d at 1125 (upholding 25.00% of the fund award resulting in a multiplier of approximately
9    5.2 and citing cases in support); *Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 255 (2001)
10   ("Multipliers can range from 2 to 4 or even higher.") (*overruled on other grounds by Hernandez v.*
11   *Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018); *In re Nasdaq Market-Makers Antitrust Litig.*,
12   187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("In recent years multipliers of between 3 and 4.5 have become
13   common") (citation omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y.
14   2002) (holding "modest" multiplier of 4.65 "fair and reasonable").

15        That the considerable risks here were undertaken by Plaintiffs' Counsel on an entirely
16   contingent basis further justifies the requested multiplier. *See Stetson*, 821 F.3d at 1166; *Vizcaino*,
17   290 F.3d at 1050; *Kerr*, 526 F.2d at 70, abrogated on other grounds by *City of Burlington v. Dague*,
18   505 U.S. 557 (1992).[11] "It is an established practice in the private legal market to reward attorneys
19   for taking the risk of non- payment by paying them a premium over their normal hourly rates for
20   wining contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299
21   (9th Cir. 1994).

22
23
24
25

26   [11]   Although the *Bluetooth* court suggested that "whether the fee was fixed or contingent" is "no
     longer [a] valid" factor, citing *Davis v. City and Cnty. of S.F.*, 976 F.2d 1536, 1546 (9th Cir.1992),
27   *Vizcaino*, which post-dates Davis, suggests otherwise, and the *Bluetooth* court nonetheless
     considered "the risk of nonpayment" among the "'reasonableness' factors" courts should consider
28   when awarding fees. *In re Bluetooth*, 654 F.3d at 942.

1

2

**VI.    THE REQUESTED LITIGATION EXPENSES ARE FAIR AND REASONABLE**

3           As detailed in Exhibit B to the Declaration of William B. Federman, Class Counsel seek

4  reimbursement of $31,500.86 in litigation expenses incurred in the prosecution of this litigation

5  on behalf of the Settlement Class, plus interest thereon.[12]

6           "Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses."

7  *Wakefield v. Wells Fargo & Co.*, 2015 WL 3430240, at *6 (N.D. Cal. May 28, 2015); *see also*

8  *Acosta v. Frito-Lay, Inc.*, 2018 WL 646691, at *11 (N.D. Cal. Jan. 31, 2018) ("There is no doubt

9  that an attorney who has created a common fund for the benefit of the class is entitled to

10 reimbursement of reasonable litigation expenses from that fund."); Fed. R. Civ. P. 23(h). This

11 includes expenses that are reasonable, directly related to the litigation, and normally charged to a

12 fee-paying client. *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 WL 3863625, at *7

13 (N.D. Cal. June 22, 2015).

14          Here, Class Counsel seek reimbursement of $31,500.86, plus interest, in litigation expenses

15 that were advanced by Class Counsel. Federman Decl., ¶ 52 & Ex. B. These expenses were

16 advanced by Class Counsel with no guarantee that they would be reimbursed. *Id.* at ¶¶ 52, 56–57.

17 Accordingly, Class Counsel were motivated to, and did, take significant steps to minimize

18 expenses wherever practicable without jeopardizing the vigorous prosecution of the case. *See, e.g.*,

19 *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) ("Class Counsel had a

20 strong incentive to keep expenses at a reasonable level due to the high risk of no recovery when

21 the fee is contingent.").

22          Class Counsel's expenses are detailed in Exhibit B to the Declarations of William B.

23 Federman, which identifies the category and amount of the expenses actually incurred. These

24 expenses were necessarily incurred and are the types of expenses routinely charged to clients billed

25 by the hour, including the cost of experts, photocopying, online legal and financial research, travel

26

27 [12]   In the Notice of Settlement, Class Counsel properly informed Class members of their intent to
28 seek reimbursement of combined litigation expenses of up to $50,000.00 plus interest. [ECF No. 63].

expenses, and filing fees. Federman Decl., ¶ 52; *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (granting award because "[a]ttorneys routinely bill clients for all of these expenses"); *Vincent*, 2013 WL 621865, at *5 (awarding expenses for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses"). Class Counsel requests pre-judgment interest begin from the initial date that the expense was accrued to the date of Final Approval, accruing at 7.00% per year pursuant to Cal. Civ. Code § 3289.

Of the total amount of expenses incurred by Class Counsel in this action, $20,000.00 was spent on mediation. *Id.* at ¶ 52. These mediation costs aided in allowing the Parties, with opposite and adverse views of each other, to engage in meaningful negotiations and discussion of the issues in this case. *See id.*

Thus, the Court should award the litigation expenses requested, plus pre-judgment interest.

## VII.   THE SERVICE AWARDS ARE REASONABLE

Finally, Class Counsel seek service awards of $2,500.00 to each of the Class Representatives in recognition of their years of service and diligence in protecting the interests of absent Settlement Class Members.

Courts routinely award such service awards for the time and effort of class representatives. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (named plaintiffs are eligible for reasonable payments as part of a class action settlement). In evaluating the reasonableness of a service award, the Court considers "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977; *see also In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 where, as here, "the class representatives spent a significant amount of time assisting in the litigation of this case, in preparing for and having their depositions taken, in searching for and producing documents . . . , and in conferring with counsel throughout the litigation").

Here, each Plaintiff soldiered through a year of litigation, individually contributing many hours toward the success of the litigation. Federman Decl., ¶ 61. Each Plaintiff diligently monitored the progress of the litigation and reviewed drafts of important pleadings. *Id.* Each Plaintiff stayed vigilant in ensuring that Class Counsel stayed up to date on all claims and updated damages. *Id.* Plaintiffs also searched for and produced responsive documents. *Id.* Throughout the course of this litigation, Plaintiffs made themselves available to respond to any task requested by Class Counsel or the Court and ultimately authorized this Settlement on behalf of the Settlement Class. *Id.*

Without the Class Representatives' time and effort, there would be no Settlement. Service awards are an important acknowledgement of Plaintiffs' dedication and time, and they should be approved consistent with other awards in the past. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming service award of $5,000.00); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (finding $5,000.00 service award reasonable); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *31 (awarding $5,000.00 to plaintiffs who responded to discovery requests and were deposed); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1314 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (awarding service awards of $15,000 to each named plaintiff).

Accordingly, the Court should award $2,500.00 to each Class Representative.

## VIII.   CONCLUSION

Class Counsel respectfully request that the Court award them attorneys' fees in the amount of $2,000,000 and litigation expenses in the amount of $31,500.86, plus interest at 7.00% per year starting from the date of accrual to the date of Final Approval, to be paid from the Settlement Fund. Class Counsel also request that service awards in the amount of $2,500.00 be awarded to each Class Representative.

DATED: August 26, 2024

By:   *s/ William B. Federman*
William B. Federman*
**FEDERMAN & SHERWOOD**

10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
*wbf@federmanlaw.com*
*Admitted Pro Hac Vice*

*Lead Counsel for Plaintiff and
for the Class*

Robert S. Green
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

*Liaison Counsel for Plaintiff and
for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

 */s/ William B. Federman*
William B. Federman