1   William B. Federman
    *Admitted Pro Hac Vice*
2   FEDERMAN & SHERWOOD
3   10205 North Pennsylvania Avenue
    Oklahoma City, OK  73120
4   Telephone:  (405) 235-1560
    Facsimile: (405) 239-2112
5   WBF@federmanlaw.com

6   Interim Lead Counsel for Plaintiffs

7   [Additional Counsel on Signature Line]

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  IN RE: ORRICK, HERRINGTON &           )   Master File No. 3:23-cv-04089-SI
    SUTCLIFFE, LLP DATA BREACH            )
12  LITIGATION                            )   CLASS ACTION
                                          )
13  This Document Relates To:             )   PLAINTIFFS' NOTICE OF MOTION FOR
                                          )   FINAL APPROVAL OF PROPOSED CLASS
14  All actions.                          )   ACTION SETTLEMENT
                                          )
15  _____)   Judge: Hon. Susan Illston
                                          )   Date: November 8, 2024
16                                            Time: 10:00 AM
                                              Courtroom: 1 – 17th Floor
17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

PLEASE TAKE NOTICE that on November 8, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston, in Courtroom 1 – 17th Floor of the above-entitled court, located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Dennis R. Werley, Robert D. Jensen, Rachel Mazanec, Scott Morrissett, Kimberley L. McCauley, Robert Bass, Jody Frease, Joby Childress, and Cathi Soule (collectively, "Plaintiffs"), will, and hereby do, move the Court under Federal Rule of Civil Procedure 23 for an order: (a) finding that the proposed settlement ("Settlement") is fair, reasonable, and adequate, and granting final approval of the Settlement; (b) finding that the form and substance of the class notice, as well as the proposed methods of disseminating notice to the Settlement Class, constitutes reasonable and the best practicable notice; (c) certify the Settlement Class for settlement purposes; and (d) directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation.

This Motion is supported by the following memorandum of points and authorities, the accompanying Declaration of William B. Federman ("Federman Decl.") and the exhibits thereto, all other facts the Court may or should take notice of, all files, records, and proceedings in this case, and any oral argument the Court may entertain.

Dated: October 4, 2024

/s/ William B. Federman
William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

LEAD COUNSEL FOR PLAINTIFFS AND
THE CLASS

Robert S. Green (State Bar No. 136183)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

LIAISON COUNSEL FOR PLAINTIFFS
AND THE CLASS

William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

Lead Counsel for Plaintiffs and the Class

[Additional Counsel on Signature Line]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ORRICK, HERRINGTON & SUTCLIFFE, LLP DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>All actions. | Case No. 3:23-cv-04089-SI<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINT AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Judge: Hon. Susan Illston<br>Date: November 8, 2024<br>Time: 10:00 AM<br>Courtroom: 1 – 17th Floor |

LEGAL02/44948074v2

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................2

        A.      The Data Breach ....................................................................................2

        B.      Procedural History .................................................................................3

        C.      Discovery ...............................................................................................3

        D.      Settlement Negotiations ........................................................................3

III.    SETTLEMENT TERMS AND BENEFITS ........................................................5

        A.      Proposed Settlement Class ....................................................................5

        B.      Settlement Benefits ...............................................................................5

        C.      Injunctive Relief....................................................................................6

IV.     NOTICE TO THE CLASS ..................................................................................7

        A.      The Court-Approved Notice Program Was Effective............................7

        B.      The Reaction of the Settlement Class ...................................................8

        C.      The Costs of Notice and Claims Administration ...................................9

V.      FINAL APPROVAL IS APPROPRIATE ...........................................................9

        A.      Legal Standards....................................................................................10

        B.      The Settlement Provides a Fair, Adequate and Reasonable Result for
                Settlement Class Members...................................................................11

                1.      The Strength of Plaintiffs' Case and the Risk, Complexity, and
                        Likely Duration of Future Litigation, Including the Risk of
                        Decertification..........................................................................11

                2.      The Amount Offered in Settlement............................................13

                3.      The Extent of Discovery Completed, and the Stage of the
                        Proceedings ..............................................................................14

                4.      The Experience and Views of Counsel......................................14

5.   Requested Award of Attorneys' Fees and Expense Reimbursement Are Reasonable ........................................................................15

6.   Settlement Resulted from Arm's Length Negotiations ...........................16

VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ......................16

VII.   CONCLUSION ...........................................................................16

1

**TABLE OF AUTHORITIES**

2

CASES

3

*Beck-Ellman v. Kaz USA, Inc.,*

4

No. 3:10-CV-02134-H-DHB, 2013 WL 10102326

5

(S.D. Cal. June 11, 2013) ......................................................................14

6

*Bellinghausen v. Tractor Supply Co.,*

7

306 F.R.D. 245 (N.D. Cal. 2015) ..........................................................13

8

*Bostick v. Herbalife Int. of Am., Inc.,*

9

No. 2:13-cv-02488, 2015 WL 12731932 (C.D. Cal. May 14, 2015)...........................9, 13

10

*Capps v. Law Offices of Peter W. Singer,*

11

No. 15-cv-02410-BAS(NLS), 2016 WL 6833937

12

(S.D. Cal. Nov. 21, 2016) ......................................................................13

13

*Carter v. Vivendi Ticketing US LLC,*

14

No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)................8

15

*Cervantez v. Celestica Corp.,*

16

No. EDCV 07-729-VAP, 2010 WL 2712267 (C.D. Cal. July 6, 2010) ..........................14

17

*Churchill Vill., L.L.C. v. GE,*

18

361 F.3d 566 (9th Cir. 2004) ..........................................................10

19

*Class Plaintiffs v. City of Seattle,*

20

955 F.2d 1268 (9th Cir. 1992) ..........................................................10

21

*Corona v. Sony Pictures Entmt., Inc.,*

22

No. 2:14-cv-9600 (C.D. Cal.) ..........................................................8

23

*Grant v. Capital Mgmt. Servs., L.P.,*

24

No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ..........................12

*Hart v. Colvin*,

No. 15-cv-00623-JST, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) .............................10

*In re Anthem, Inc. Data Breach Litig.*,

No. 5:15-MD-02617-LHK (N.D. Cal.) ...................................................... 8, 13

*In re Austrian & German Bank Holocaust Litig.*,

80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............................................................12

*In re Brinker Data Incident Litig.*,

No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508

(M.D. Fla. Apr. 14, 2021) ............................................................... 15

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,

No. 1:14-md-02583-TWT (N.D. Ga. 2016) .............................................13, 15

*In re Solara Medical Supplies Data Breach Litig.*,

Case No. 3:19-cv-02284-H-KSC (S.D. Cal.) ....................................................15

*In re Sonic Corp. Customer Data Breach Litig.*,

No. 1:17-md-02807-JSG (N.D. Ohio) ...................................................... 15

*In re Sunrise Sec. Litig.*,

131 F.R.D. 450 (E.D. Pa. 1990) ..............................................................12

*In re Target Corp. Customer Data Sec. Breach Litig.*,

No. 0:14-md-02522-PAM (D. Minn. 2015) ....................................................13

*Koenig v. Lime Crime, Inc.*,

No. 2:16-CV-00503-PSG (C.D. Cal.) ..........................................................8

*Mahoney v. TT of Pine Ridge, Inc.*,

No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860

(S.D. Fla. Nov. 20, 2017) ................................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

 339 U.S. 306 (1950) .............................................................................8

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,

 688 F.2d 615 (9th Cir. 1982) ......................................................... 11

*Riker v. Gibbons*,

 No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012

 (D. Nev. Oct. 28, 2010) ..............................................................14–15

*Shames v. Hertz Corp.*,

 No. 07-CV-2174-MMA WMC, 2012 WL 5392159

 (S.D. Cal. Nov. 5, 2012) ...............................................................16

*United States v. Armour & Co.*,

 402 U.S. 673 (1971) ...................................................................... 13

*Weinberger v. Kendrick*,

 698 F.2d 61 (2d Cir. 1982) ............................................................ 12

## STATUTES, RULES AND REGULATIONS

Fed. R. Civ. P. 23 ............................................................. *passim*

## SECONDARY AUTHORITIES

Federal Judicial Center, Illustrative Forms of Class Action Notices: Overview,

 https://www.fjc.gov/content/ 301253/illustrative-forms-class-action-noticesintroduction

 (last visited September 25, 2024) ...................................................... 7

1

## I.    INTRODUCTION[1]

2       Following almost a year of hard-fought litigation, including two days of strenuous

3    mediation sessions with mediator Antonio Piazza, and months of subsequent settlement

4    discussions, the Parties[2] reached a proposed Settlement.  The Settlement was achieved only after

5    the Parties thoroughly researched the issues in this case, engaged in substantial informal discovery,

6    briefed and discussed the legal and factual issues in this case, and presented arguments multiple

7    times to the mediator. Though much of this case was litigated outside of the courtroom, this case

8    was thoroughly litigated and the Settlement is the result of an arms'-length negotiation.

9       The Settlement provides an exceptional result for the Class in the form of two components:

10    (1) a $8,000,000.00 non-reversionary cash Settlement Fund, and (2) substantial and meaningful

11    injunctive relief. From the Settlement Fund, Settlement Class Members who submit a valid Claim

12    Form will be entitled to a cash payment of up to $2,500.00 for out-of-pocket expenses, $7,500.00

13    for extraordinary losses, $125.00 for lost time, or, in the alternative, a $75.00 cash payment. The

14    Settlement structure is exceptionally favorable since the Settlement here allows Class Members to

15    receive the alternative cash payment *without* requiring Class Members to identify or prove any

16    specific harm, lost time, or out-of-pocket losses. Finally, California residents may submit an

17    additional claim of $150.00 for their CCPA claim. The injunctive relief component is also highly

18    beneficial to the Settlement Class as it requires Orrick, Herrington & Sutcliffe, LLP ("Orrick") to

19    implement and maintain meaningful data security enhancements to help protect Settlement Class

20    Members from any future data breach at Orrick.

21       The Settlement involves a multi-pronged notice program and user-friendly Claims process,

22    which have been, and are being, implemented by the Settlement Administrator. The Court-

23

24    ---

[1]    Orrick does not oppose the relief sought by this Motion for Final Approval (the "Motion") and

25    agrees that the Court should grant the Motion. By not opposing this relief, Orrick does not concede
       the factual basis for any claim and denies liability. The language in this Motion, including the

26    description of proceedings, as well as legal and factual arguments, is Plaintiffs', and Orrick may
       disagree with certain of those characterizations and descriptions.

27    [2]    Capitalized terms shall have the same meaning as set forth in the Agreement, unless otherwise

28    noted.

approved notice program provided for notice by mail and email, in addition to the creation of a Settlement Website.  Ultimately, the Settlement Administrator emailed notices to 713 Class Members' last known email addresses.  *See* Declaration of Vanessa Santacruz ("Santacruz Decl."), ¶¶ 11–12. The Settlement Administrator mailed notice to the remaining 622,035 Class Members. *Id.* at ¶¶ 9–10. The Settlement Administrator reasonably opines that the notice reached over 94% of the Class.  *Id.* at ¶ 13.

The deadline to submit objections to the settlement or opt-out of the settlement was September 30, 2024. The reaction from Class Members has been overwhelmingly positive and strongly supports final approval.  By submitting claim forms, 15,022 Class Members have already affirmatively voted "yes" to this Settlement, while only 19 have opted out and only one informally objected. *Id.* at ¶¶ 16–18.

On May 31, 2024, this Court entered an Order Conditionally Certifying a Settlement Class, Granting Preliminary Approval of the Class Action Settlement, Appointing Class Representatives and Counsel, Approving Class Notice, and Scheduling a Final Approval Hearing.  *See* ECF No. 67 ("Preliminary Approval Order").  The Court found that the Settlement "is fair, reasonable, and adequate, otherwise meets the criteria for approval, and warrants issuance of notice to the Settlement Class." *Id.* at 3.

Considering the valuable benefits conveyed to members of the Settlement Class, and the significant risks faced through continued litigation, the Settlement is "fair, reasonable, and adequate," and merits final approval.  Fed. R. Civ. P. 23(e)(2).

## II.     BACKGROUND

### A.      The Data Breach

This consolidated lawsuit arises from the alleged compromise of Plaintiffs' and the Class Members' PII due to a breach of Orrick's network. On or around March 13, 2023, Orrick detected third-party criminal activity on its network (the "Data Breach"). Upon further investigation of the matter, Orrick determined that the third-party gained unauthorized access to its network between November 19, 2022 and March 13, 2023. Ultimately, 638,023 individuals were notified that their

1   Personal Identifiable Information ("PII") was potentially accessed and exfiltrated in the Data
2   Breach.

3   **B.      Procedural History**

4   On August 11, 2023, Plaintiff Dennis R. Werley filed the first complaint against Orrick in
5   this Court for claims arising from the Data Breach. (ECF No. 1); *See* Declaration of William B.
6   Federman ("Federman Decl."), ¶¶ 3–4. Subsequent related complaints were filed, and on
7   December 19, 2023 the Court entered an order consolidating the related actions and appointing
8   William B. Federman of Federman & Sherwood as Interim Lead Class Counsel (ECF No. 49);
9   Federman Decl., ¶¶ 5–6.  On January 5, 2024, Plaintiffs filed the Consolidated Class Action
10  Complaint (ECF No. 53).

11  During this time, the Parties were engaging in multiple days of mediation discussions with
12  mediator Antonio Piazza and conducted meaningful informal discovery. Federman Decl., ¶¶ 12–
13  26.  The Parties also continued to pursue this action by vetting additional plaintiffs, conducting a
14  Rule 26(f) conference and drafting and filing case management statements, developing and filing
15  a consolidated complaint, and researching and briefing the legal issues in this case. *Id.* at ¶¶ 19–
16  20. On eve of the Parties' initial scheduling conference, December 14, 2023, the Parties came to a
17  settlement agreement and promptly notified the Court. (ECF No. 50)

18  **C.      Discovery**

19  The Parties engaged in extensive informal discovery for months. Federman Decl., ¶¶ 8–9.
20  Plaintiffs received and reviewed hundreds of pages of documents and information directly from
21  Defendant, regarding the Data Breach. *Id.* at ¶ 9. Based on this information, Plaintiffs were able to
22  engage in meaningful settlement discussions and investigate their claims.

23  **D.      Settlement Negotiations**

24  The Parties engaged in extensive settlement discussions before reaching the Settlement.

25  Before the Parties engaged in any settlement discussions, Plaintiffs sent Defendant
26  numerous informal discovery requests. *Id.* at ¶¶ 8–9.  Plaintiffs reviewed this information, gaining
27  an in-depth understanding of the Data Breach and the strength of Plaintiffs' claims. *Id.* at ¶ 10. On

28

September 29, 2023, Plaintiffs served their first confidential settlement demand on Orrick. *Id.* at ¶ 12.

In preparation for mediation, Plaintiffs spent multiple days researching and briefing the legal and factual issues in this case. *Id.* at ¶ 13. Plaintiffs consolidated their research and information into a thorough mediation statement. *Id.* at ¶ 16. On October 16, 2023, the Parties met with mediator Antonio Piazza for a full day of mediation that lasted over 10 hours. *Id.* at ¶ 17. The Parties discussed factual and liability issues, the state of the law, potential damages, and the Plaintiffs' ability to certify the class. *Id.* Lead Class Counsel spent many hours with Mr. Piazza, informing him of the strengths of Plaintiffs' and the Class Members' claims and discussing with him the relevant case law. *Id.* Mr. Piazza noted Lead Class Counsel's substantial knowledge and understanding of the data breach field and challenged the assertions made, similar to what would take place during litigation in this case. *Id.* Both parties argued complex areas of fact and law with each other and with the mediator. *Id.* Ultimately, although some progress was made, the day did not result in a settlement as both Parties zealously advocated for their respective client(s) and did not agree on a damages model nor the ability of Plaintiffs to succeed in the litigation. *Id.*

Although the first mediation session did not result in a resolution of the case, the mediator believed that sufficient progress was made to warrant a second mediation session. *Id.* at ¶ 22. Between the two mediation sessions, the mediator continued to work with both sides and requested additional information including case law and comparable resolutions. *Id.* at ¶ 18. Based on the discussions from the prior mediation, Lead Class Counsel spent time conducting research on the matters at issue and provided Mr. Piazza with multiple memorandums on Plaintiffs' damages, the legal implications of CCPA claims, and Defendant's duties and liability under relevant law. *Id.* In early December, other law firms filed the Related Actions. *Id.* at ¶ 21. Lead Class Counsel was well entrenched in litigation before the additional cases were filed. Lead Class Counsel took immediate steps to consolidate these actions and work with the other law firms to avoid unnecessary delay and duplication of efforts and litigation expenses. *Id.*

Mr. Piazza, after receiving additional information from the Parties, had separate follow up discussions with the Parties and invited the Parties back to mediation on December 14, 2023. *Id.* at

¶ 22. After several more hours of mediation, the parties reached an agreement in principle to a substantial cash Settlement Fund of $8,000,000.00 with additional meaningful remedial measures (including enhanced security infrastructure and managed detection and response). *Id.* at ¶¶ 24–26.

On April 10, 2024, after additional negotiations the Settlement Agreement was finalized and executed. *See* ECF No. 58-1.

## III. SETTLEMENT TERMS AND BENEFITS

The Settlement confers valuable benefits on the Settlement Class. First, all Settlement Class Members who submit a claim are eligible to receive a cash payment from the $8,000,000.00 non-reversionary Settlement Fund. Second, significant remedial measures that Orrick has and will enact because of this litigation will benefit all Settlement Class Members, regardless of whether they submit a claim. The Settlement benefits could not have been obtained without this litigation.

### A.    Proposed Settlement Class

The Court's Preliminary Approval Order preliminarily certified a Settlement Class, consisting of the approximately 638,023 residents of the United States who were sent notice that their personal information was accessed, stolen, or compromised because of the Data Breach, including the California Subclass. The Settlement Class specifically excludes: (i) Orrick, any Entity in which Orrick has a controlling interest, and Orrick's partners, officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement. *See* ECF No. 67, at p. 2.

### B.    Settlement Benefits

$8,000,000.00 will be deposited into a non-reversionary Settlement Fund. Once claims administration costs, attorneys' fees and expenses award, and any service awards to Settlement Class Representatives have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, will be distributed to Settlement Class Members who submit a valid claim form.

Settlement Class Members can submit documentation and attestations to receive compensation from the settlement. Settlement Class Members can submit claims up to $2,500.00 for out-of-pocket expenses. Settlement Class Members who experienced extraordinary losses may

submit claims for up to $7,500.00. The Settlement allows for Class Members to submit a claim for time spent in an amount of $25.00 per hour up to five (5) hours, for a total of $125.00. Finally, California residents can submit claims for an additional $150.00 for their CCPA claims.

In lieu of submitting a claim for out-of-pocket expenses, lost time, and extraordinary losses, Settlement Class Members may opt to receive an alternative cash payment of $75.00. Settlement Class Members are **not** required to attest to having spent time in response to the Data Breach nor are they required to present any documentation to receive this alternative cash payment.  Instead, Settlement Class Members need only provide basic contact information, select their preferred form of payment, and submit their signed claim.

If the total amount of Approved Claims, when aggregated with the Administration and Notice Costs, Attorneys' Fees as approved by the Court, Expenses as approved by the Court, and Service Awards as approved by the Court is less than the amount of the Settlement Fund, then Approved Claims will be increased on a *pro rata* basis until the total amount of Approved Claims, when aggregated with the Administration and Notice Costs, Attorneys' Fees as approved by the Court, Expenses as approved by the Court, and Service Awards as approved by the Court equals the amount contained in the Settlement Fund. Based on the number of claims received, Settlement Class Counsel anticipates that each Settlement Class Member who submitted a claim for monetary compensation will likely receive a pro rata increase of their claim. *See* Federman Decl., ¶ 45 (relying on Santacruz Decl., ¶ 16).

The monetary component of the Settlement provides a significant cash benefit to Settlement Class Members.

## C.    Injunctive Relief

The Settlement will also provide all Settlement Class Members with benefits in the form of meaningful business practice changes relating to Orrick's data security.

Orrick further enhanced its data security infrastructure by improving its detection and response tools, enhancing its continuous vulnerability scanning at both the network and application levels, deploying additional endpoint detection and response software, and performing additional 24/7 network managed detection and response. These remedial measures benefit every Class

Member, regardless of whether the Class Member submits a Claim under the Settlement. These measures will provide meaningful enhancements to Orrick's data security infrastructure. *See* Federman Decl., at ¶ 32.

## IV.   NOTICE TO THE CLASS

### A.   The Court-Approved Notice Program Was Effective

The Court-approved notice program was effective and constituted the best notice practicable under the circumstances.  Rule 23(c)(2).

The notice program provided for notice by email and mail and the creation of a Settlement Website.  *See* Santacruz Decl., ¶¶ 9–14. Following preliminary approval of the Settlement, Orrick provided the Settlement Administrator with the list of the names, email addresses, and/or physical addresses of all Settlement Class Members identified through its records.   Thereafter, the Settlement Administrator emailed notices to 713 Settlement Class Members' last known email addresses and mailed notices to 622,748 Settlement Class Members whose email addresses were not known. *Id.*  The Settlement Administrator reasonably opines that the notice reached over 94% of the Settlement Class. *Id.* Large and well-known websites, including Reuters.com and ClassAction.Org, also generated and posted reports informing the public about the Settlement. *See, e.g.*, David Thomas, *Law Firm Orrick Agrees to $8 Mln Settlement Over Breach of Client Data*, Reuters (Apr. 11, 2024), https://www.reuters.com/legal/litigation/law-firm-orrick-agrees-8-mln-settlement-over-breach-client-data-2024-04-11/; *Orrick. Herrington & Sutcliffe Data Breach Lawsuits Settled for $8M*, ClassAction.org (July 2, 2024), https://www.classaction.org/orrick-herrington-sutcliffe-lawsuit.

The Notices themselves were clear and straightforward, consistent with the guidelines set forth by the Federal Judicial Center.  *See* Federal Judicial Center, Illustrative Forms of Class Action Notices: Overview, https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited September 25, 2024).  The Notices provide neutral, objective, and accurate information about the nature of the Action and the Settlement, including the deadlines and means of submitting a Claim Form, objecting, and/or appearing at the Fairness Hearing personally or through counsel.  The Settlement Administrator also created and maintained the

Settlement Website from which Settlement Class Members could submit claims and view important documents. Santacruz Decl., ¶ 14. Furthermore, Settlement Class Members were able to call a toll-free number with FAQs. *Id*. at ¶ 15.

Thus, Settlement Class Members received the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2), by receiving notice that was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).

## B.    The Reaction of the Settlement Class

The Class Members have had an overwhelmingly positive response to the Settlement.

The claims deadline is October 28, 2024.  As of this filing, a total of 15,022 claims have been received.  *See* Santacruz Decl., ¶ 16.  This amounts to a response rate of 2.4% of the approximately 638,023 Class Members, to date.  This compares favorably to the claims rates in other data breach class action settlement as evidenced by the below chart. *See also*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate (which represents the estimated size of the targeted population of potential class members compared to the actual claim submissions) is on par with other consumer cases, and does not otherwise weigh against approval.").

| Case | Approx. Class Size | No. of Claims | Claims Rate |
|---|---|---|---|
| *Corona v. Sony Pictures Entmt., Inc*., No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at 2. | 435,000 | 3,127 | 0.7 % |
| *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) | 79,150,325 | 1,410,000 | 1.8 % |
| *Koenig v. Lime Crime, Inc.*, No. 2:16-CV-00503-PSG (JEMx) (C.D. Cal.), ECF Nos. 55 at 1, 55-2 ¶ 11. | 107,726 | 2,666 | 2.47% |
| *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) | 437,310 | 6,864 | 1.56% |

| | | | |
|---|---|---|---|
| *Bostick v. Herbalife Int. of Am., Inc.*, No. 2:13-cv-02488, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) | 1,533,339 | 7,457 | 0.5% |

The deadline for Settlement Class Members to object to any aspect of the Settlement was September 30, 2024. Only 19 class members opted out of the Settlement and only *one* class member attempted to submit an objection. Santacruz Decl., ¶¶ 17–18. The objecting party, Mr. Daniel Kanner, did not file his objection with the Court as required under the Settlement Agreement. Notably, Mr. Daniel Kanner's objection incorrectly suggests that class members must submit supporting documentation and affidavits to receive compensation under the Settlement. The Settlement allows Settlement Class Members to submit a claim for an alternative cash payment without submitting any documents or attestations.

A supplemental declaration detailing the final claims rate and any objections will be filed after the October 28, 2024 Claims Deadline and prior to the November 8, 2024 final approval hearing.

### C.    The Costs of Notice and Claims Administration

Under the Agreement, the costs for class notice and administration of the Settlement will be paid by Orrick with such payment to be made from the Settlement Fund. Class Counsel solicited numerous bids from, and negotiated pricing with, multiple settlement administrators. Ultimately, Class counsel was able to secure an agreement with KCC Class Action Services, now Verita, under which the costs of notice and settlement administration are approximately $305,665.29. *See* Santacruz Decl., ¶ 19.

## V.    FINAL APPROVAL IS APPROPRIATE

The Court completed the first step in the settlement approval process when it issued the Preliminary Approval Order. The second step — dissemination of notice to Class Members — has been implemented. *Id.* at ¶¶ 5–15. By this motion, Plaintiffs respectfully request that the Court take the third and final step in the process, and grant final approval to the Settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.      Legal Standards**

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002, at *4 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  In the context of a class settlement, the Court must determine whether the settlement is "'fundamentally fair, adequate and reasonable'" under Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

In evaluating whether to grant final approval of the Settlement, courts in the Ninth Circuit consider: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).

In addition to the Ninth Circuit's factors, the Supreme Court approved amendments to Rule 23(e), which went into effect on December 1, 2018. The amendments involve considerations for judicial approval of class action settlements and are substantially incorporated within the Ninth Circuit's existing factors set forth above.[3] For example, amended Rule 23(e)(2)(C)(i) requires that courts consider whether "the relief provided for the class is adequate, taking into account . . . the

---

[3]      Rule 23(e)(2), as amended, provides that in order for the Court to conclude that it will likely find that the settlement is fair, reasonable and adequate, it must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

  (i)      the cost, risks and delay of trial and appeal;

  (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii) the terms of any proposed award of attorney's fees including timing of payment; and

  (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

costs, risks, and delay of trial and appeal," and amended Rule 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." Both these considerations are discussed in detail below and herein. Further, amended Rule 23(e)(2)(C)(ii) ("effectiveness of any proposed method of distributing relief to the class"), Rule 23(e)(2)(C)(iv) ("any agreement required to be identified"), and Rule 23(e)(2)(D) (whether "the proposal treats class members equitably relative to each other") are all addressed above.

**B.     The Settlement Provides a Fair, Adequate and Reasonable Result for Settlement Class Members**

When evaluating a settlement, courts must consider the settlement taken as a whole, rather than its individual component parts, and examine it for overall fairness. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.*   To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

**1.     The Strength of Plaintiffs' Case and the Risk, Complexity, and Likely Duration of Future Litigation, Including the Risk of Decertification[4]**

Balancing the risks of continued litigation against the immediacy and certainty of the significant recovery provided for by the Settlement supports that the Settlement should be approved. When reviewing a class action settlement agreement:

> The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

---

[4] This factor overlaps with amended Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and appeal).

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014).

Plaintiffs and Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance their claims if it were otherwise. However, they also recognize the substantial risks involved in continuing this litigation. Settlement Class Members thus faced the risk, expense, and delay of a potentially lengthy appeal after trial, holding up any recovery for Settlement Class Members for several more years.

Prosecuting this litigation through trial and appeal would be lengthy, complex, and impose significant costs on all parties. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delay, and multitude of other problems associated with them"). Given the complex nature of the security breach at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice related to such. This would create unavoidable uncertainty and delay.

The Settlement, in contrast, delivers a real and substantial remedy that fairly, reasonably, and adequately addresses the situation confronting the members of the Settlement Class without the risk and delay inherent in prosecuting this matter through trial and appeal. Thus, this factor favors approval of the Settlement. *See Grant*, 2014 WL 888665, at *3; *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving a class action settlement because, in part, the settlement "will alleviate . . . the extraordinary complexity, expense and likely duration of this litigation").

### 2.    The Amount Offered in Settlement[5]

The Settlement amount represents a fair, adequate, and reasonable result for Settlement Class Members.  Any valuation of the Settlement must take into account the $8,000,000 non-reversionary Settlement Fund and the remedial measures being undertaken by Orrick. Accordingly, the appropriate ***value of the Settlement exceeds $8,000,000.00***.

As described above, the Approved Claims will likely be increased on a *pro rata* basis until the total amount of Approved Claims, when aggregated with the Administration and Notice Costs, Attorneys' Fees as approved by the Court, Expenses as approved by the Court, and Service Awards as approved by the Court equals the amount contained in the Settlement Fund. "As explained by the Supreme Court, '[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'" *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-02410-BAS(NLS), 2016 WL 6833937, at *8 (S.D. Cal. Nov. 21, 2016) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). Unsurprisingly then, courts routinely approve settlements that provide a far lower rate of recovery than the Settlement does here.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving class settlement of 11%-27% recovery); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV-MIDDLEBROOKS, 2017 WL 9472860, at *7 (S.D. Fla. Nov. 20, 2017) (approving settlement awarding class members 0.8% of minimum statutory damages).

Indeed, the Settlement compares favorably to other data breach settlements.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-MD-02617-LHK (N.D. Cal.) (securing $1.39 per class member); *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga. 2016) ($0.51 to $.68 per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522-PAM (D. Minn. 2015) ($0.15 per class member); *Bostick v. Herbalife Int. of Am., Inc.*, No. 2:13-cv-02488, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2027) ($9.78 per class member).

---

[5]    This factor overlaps with amended Rule 23(e)(2)(C) (adequacy of relief provided to the class).

Importantly, the injunctive relief component of the Settlement provides even more benefits to Settlement Class Members. *See Beck-Ellman v. Kaz USA, Inc.,* No. 3:10-CV-02134-H-DHB, 2013 WL 10102326, at *5 (S.D. Cal. June 11, 2013) (Huff, J.) (including injunctive relief valued by expert to be worth $10,726,000 as part of the amount offered in settlement).

By any metric, this recovery is fair, reasonable, and adequate.

### 3. The Extent of Discovery Completed, and the Stage of the Proceedings[6]

The fact that the Parties engaged in meaningful informal discovery and thoroughly briefed and discussed various issues prior to and during mediation "weighs in favor of the proposed settlement." *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 WL 2712267, at *3 (C.D. Cal. July 6, 2010).

As the Court can see from the procedural history set forth above, this Action has been pending for almost a year. Throughout that time, the Parties engaged in significant and lengthy discussions surrounding the facts and legal issues in this case, both together and with a neutral mediator. Plaintiffs received and reviewed hundreds of pages of informal discovery and spent hours researching the claims of the class. The Parties briefed many of the issues in this case with statements and memorandums to the mediator. This case was thoroughly litigated outside of this Court.

Thus, as in *Cervantez*, the extent of discovery and stage of proceedings factor weighs strongly in favor of approving the Settlement. *See* 2010 WL 2712267, at *3.

### 4. The Experience and Views of Counsel

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4-5 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). Here, Class Counsel are experienced litigators and view the Settlement as an excellent result for the Class.

---

[6] This factor overlaps with amended Rule 23(e)(2)(A) (whether "the class representatives and class counsel have adequately represented the class").

Mr. Federman is highly experienced in handling complex class actions like this Action and have proven track records of experience, knowledge, and success in litigating complicated litigation matters, including data breach cases.  *See, e.g.*, *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021) (court-appointed class counsel in certified Rule 23(b)(3) class action on behalf of individual consumers following data breach involving payment card information); *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (settlement fund of $13 million); *In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-md-02807-JSG (N.D. Ohio) (settlement fund of $4.325 million); *In re Solara Medical Supplies Data Breach Litig.*, Case No. 3:19-cv-02284-H-KSC (S.D. Cal.) (settlement value of $9.7 million).

Class Counsel believe that the Settlement provides a fair, adequate, and reasonable recovery for Settlement Class Members. As Class Counsel are experienced attorneys in this field, their opinion that the Settlement is fair, adequate, and reasonable and in the Settlement Class Members' best interest also weighs in favor of approval of the Settlement.  *Riker*, 2010 WL 4366012, at *5.

### 5. Requested Award of Attorneys' Fees and Expense Reimbursement Are Reasonable[7]

Class Counsel have moved for an award of attorneys' fees in the amount of $2,000,000. As explained in the fee motion, the requested award is supported by the results achieved, the risks of the litigation, the quality of Plaintiffs' representation, awards in comparable cases, the contingent nature of the representation, the response of the Settlement Class, and the time spent by Class Counsel on this matter. Plaintiffs also seek an award of litigation expenses and costs of $31,500.86.  Plaintiffs also move for service awards in the amount of $2,500.00 to each Settlement Class Representative ($22,500.00 in total) for their service on behalf of the Settlement Class, including reviewing and approving pleadings and motions filed in the case, responding to discovery requests, gathering and producing documents related to their claims, and communicating with counsel throughout the settlement negotiations.  Any awards of attorneys' fees, expenses, and

---

[7] This section addresses with Rule 23(e)(2)(3) (proposed award of attorneys' fees).

1    service awards will be paid 21 calendar days after the Court's award of such fees and expenses, or

2    21 calendar days after the Court's entry of the Final Order and Judgment.

3         Accordingly, this factor does not pose a barrier to granting approval.

4         **6.       Settlement Resulted from Arm's Length Negotiations**

5         The Parties negotiated an impressive Settlement worth more than $8 million. This

6    extremely favorable result was achieved only after Class Counsel fought long and hard to secure

7    these benefits for the Settlement Class. Federman Decl., ¶¶ 3–31.  Negotiations were at arm's length,

8    often tense, and were facilitated with the assistance of a neutral mediator Antonio Piazza. Indeed,

9    the Parties reached a Settlement only after multiple mediation sessions and when Mr. Piazza deftly

10   brokered an agreement after lengthy mediation discussions did not result in a resolution. This is

11   compelling evidence in support of the Settlement's fairness. *See, e.g.*, *Shames v. Hertz Corp.*, No.

12   07-CV-2174-MMA WMC, 2012 WL 5392159, at *15 (S.D. Cal. Nov. 5, 2012) (granting final

13   approval and finding lengthy settlement negotiations overseen by mediators and contentious nature

14   of proceedings convincing evidence that settlement not a result of collusion).

15   **VI.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

16        Under the terms of the Agreement, the Parties have agreed, for the purposes of the

17   Settlement only, to the certification of the Settlement Class, defined as follows:

18        All residents of the United States who were sent notice that their personal
          information was accessed, stolen, or compromised as a result of the Data Breach,
19        including the California Subclass. The Settlement Class specifically excludes:
          (i) Orrick, any Entity in which Orrick has a controlling interest, and Orrick's
20        partners, officers, directors, legal representatives, successors, subsidiaries, and
          assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the
21        members of their immediate families and judicial staff; and (iii) any individual who
          timely and validly opts out of the Settlement.
22

23        In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class.

24   *See* ECF No. 67, p. 2–3.  Nothing has changed since then, and thus Plaintiffs respectfully request

25   that the Court finally certify the Settlement Class for Settlement purposes.

26   **VII.   CONCLUSION**

27        Plaintiffs respectfully request that the Court grant their motion for final approval and enter

28   an order of judgment.

Dated: October 4, 2024

/s/ William B. Federman
William B. Federman
*Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Telephone:  (405) 235-1560
Facsimile: (405) 239-2112
WBF@federmanlaw.com

LEAD COUNSEL FOR PLAINTIFFS AND
THE CLASS

Robert S. Green (State Bar No. 136183)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

LIAISON COUNSEL FOR PLAINTIFFS
AND THE CLASS